# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA**,

*Plaintiff-Appellant*,

v.

**ADRIANNE TODMAN, ACTING SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AND UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,**

*Defendants-Appellees*.

Appeal From the United States District Court
for the Northern District of Illinois
Case No. 1:13-cv-08564
The Honorable Chief Judge Rebecca R. Pallmeyer

**BRIEF OF AMICUS CURIAE STATE OF IDAHO *ex rel.* DIRECTOR DEAN CAMERON, IDAHO DEPARTMENT OF INSURANCE; STATE OF MONTANA *ex rel.* COMMISSIONER TROY DOWNING, OFFICE OF THE MONTANA STATE AUDITOR; STATE OF LOUISIANA *ex rel.* COMMISSIONER TIM TEMPLE, LOUISIANA DEPARTMENT OF INSURANCE; STATE OF GEORGIA *ex rel.* COMMISSIONER JOHN F. KING, OFFICE OF THE COMMISSIONER OF INSURANCE AND SAFETY FIRE; STATE OF SOUTH DAKOTA *ex rel.* DIRECTOR LARRY DEITER, SOUTH DAKOTA DIVISION OF INSURANCE; STATE OF OKLAHOMA *ex rel.* COMMISSIONER GLEN MULREADY, OKLAHOMA INSURANCE DEPARTMENT; STATE OF NORTH DAKOTA *ex rel.* COMMISSIONER JOHN GODFREAD, NORTH DAKOTA DEPARTMENT OF INSURANCE; STATE OF MISSISSIPPI *ex rel.* COMMISSIONER MIKE CHANEY, MISSISSIPPI DEPARTMENT OF INSURANCE; STATE OF OHIO; STATE OF IOWA *ex rel.* COMMISSIONER DOUG OMMEN, IOWA INSURANCE DIVISION; STATE OF NEW HAMPSHIRE *et rel.* COMMISSIONER DAVID J. BETTENCOURT, NEW HAMPSHIRE INSURANCE DEPARTMENT; STATE OF ALABAMA *et rel.* COMMISSIONER MARK FOWLER, ALABAMA DEPARTMENT OF INSURANCE**

**SUPPORTING APPELLANT PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA AND URGING REVERSAL**

JOHN C. KEENAN
LEAD DEPUTY ATTORNEY
GENERAL
ATTORNEY GENERAL RAÙL
LABRADOR
IDAHO DEPARTMENT OF
INSURANCE
DIRECTOR DEAN L. CAMERON
700 W. State Street
Boise, ID 83720
(208) 334-4283
john.keenan@doi.idaho.gov

J. DAVID CALDWELL
EXECUTIVE COUNSEL
LOUISIANA DEPARTMENT
OF INSURANCE
COMMISSIONER TIM TEMPLE
1702 North Third St.
P.O. Box 94214
Baton Rouge, LA 70804-9214
(225) 342-4673
David.Caldwell@ldi.la.gov

FRANK MARNELL
SENIOR LEGAL COUNSEL
DIVISION OF INSURANCE
SOUTH DAKOTA DEPARTMENT
OF LABOR AND REGULATION
DIRECTOR LARRY DIETER
125 S. Euclid Ave.
Pierre, SD 57501
(605) 773-3563
Frank.Marnell@state.sd.us

JOHANNES PALSGRAAF
GENERAL COUNSEL
NORTH DAKOTA INSURANCE
DEPARTMENT
COMMISSIONER JOHN
GODFREAD
600 E. Boulevard Ave.
Bismarck, ND 58505
(701) 328-2440
jpalsgraaf@nd.gov

KATE MCGRATH ELLIS
CHIEF LEGAL COUNSEL
MARK MATTIOLI
SENIOR LEGAL COUNSEL
MONTANA COMMISSIONER OF
SECURITIES AND INSURANCE
COMMISSIONER TROY DOWNING
840 Helena Ave.
Helena, MT 59601
(406) 444-2040
Kate.Ellis@mt.gov
mark.mattioli@mt.gov

JEREMY BETTS
EXECUTIVE COUNSEL
OFFICE OF COMMISSIONER OF
INSURANCE AND SAFETY FIRE
COMMISSIONER JOHN F. KING
2 Martin Luther King Jr. Dr.
West Tower, Suite 792
Atlanta, GA 30334
(404) 651-6501
jbetts@oci.ga.gov

KIMBERLY C. HUNTER
GENERAL COUNSEL
OKLAHOMA INSURANCE
DEPARTMENT
COMMISSIONER GLEN MULREADY
400 NE 50th St.
Oklahoma City, OK 73105
(405) 522-6335
Kim.hunter@oid.ok.gov

CHRISTINA KELSEY
GENERAL COUNSEL
MISSISSIPPI INSURANCE
DEPARTMENT
COMMISSIONER MIKE CHANEY
P.O. Drawer 79
Jackson, MS 39201
(601) 359-3577
Kim.Causey@mid.ms.gov

DAVE YOST
OHIO ATTORNEY GENERAL
T. ELLIOT GAISER
SOLICITOR GENERAL
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
thomas.gaiser@ohioago.gov

ATTORNEY GENERAL JOHN M.
FORMELLA
CHRISTOPHER G. BOND
ASSOCIATE ATTORNEY
GENERAL
NEW HAMPSHIRE INSURANCE
DEPARTMENT
COMMISSIONER DAVID J.
BETTENCOURT
21 S Fruit St, Ste. 14
Concord, NH 03301
(603) 271-2261
christopher.g.bond@doj.nh.gov

ATTORNEY GENERAL BRENNA BIRD
ERIC WESSAN
SOLICITOR GENERAL
ATTORNEYS FOR
DOUGLAS M. OMMEN
IOWA INSURANCE COMMISSIONER
1963 Bell Ave
Des Moines, IA 50315
(515) 823-9117
eric.wessan@ag.iowa.gov

J. FAIRLEY MCDONALD, III
DEPUTY ATTORNEY GENERAL
ALABAMA DEPARTMENT OF
INSURANCE
COMMISSIONER MARK FOWLER
201 Monroe Street
Montgomery, Alabama 36104
(334) 241-4120
john.mcdonald@insurance.alabama.gov

August 21, 2024

# **TABLE OF CONTENTS**

IDENTITY OF INTERESTS OF THE AMICI STATES ................................................... 1

INTRODUCTION AND BACKGROUND ............................................................. 1

SUMMARY OF ARGUMENT .................................................................... 3

    I.       McCarran-Ferguson Act – 15 U.S.C. § 1011 ............................................ 4

    II.    Actuarial Pricing and Underwriting Practices ............................................ 6

    III.   Legal Complexity, Regulatory Uncertainty, and Regulatory Costs .................9

    IV.   Insurer Solvency .............................................................................13

CONCLUSION .................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

***Doe v. Mutual of Omaha Ins. Co.***
    179 F.3d 557, 563, 564 (7th Cir. 1999) ...................1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15

***Group Life & Health Ins. Co. v. Royal Drug Co****.*
    440 U.S. 205, 211 (1979) .............................................................................7, 8

***Humana, Inc. v. Forsyth***
    525 U.S. 299 (1999) ...........................................................................................13

***Loper Bright Enterprises v. Raimondo***
    144 S.Ct. 2244, 2266 (June 28, 2024) ...........................................................10, 11

***Ojo v. Farmers Group, Inc.***
    600 F.3d 1201, 1204-05 (9th Cir. 2010) ...............................................................7

***Paul v. Virginia***
    75 U.S. 168 (1868) .................................................................................................4

***Property Casualty Insurers Association of America v. Adrianne Todman***
    2024 U.S. Dist. LEXIS 53688, *24-25, *26-33, *37 (N.D. Ill. March 26, 2024) ...............2
    2024 U.S. Dist. LEXIS, *25, *26, *32, *39, *40-41, *42, *44, *47 (7th Cir. 2024) .............
    .............................................................................................3, 7, 8, 9, 10, 11

***Property Casualty Insurers Association of America v. Adrianne Todman, No. 24-1947***
    Appellant's Opening Brief, Appendix at 336-341 ................................................5
    Appellant's Opening Brief at 57 ..........................................................................7
    Appellant's Opening Brief at 60-61 ....................................................................11
    Appellant's Opening Brief at 45-47 ....................................................................14
    Appellant's Opening Brief at 50-51 ....................................................................14

***Saunders v. Farmers Insurance Exchange***
    537 F.3d 961, 967-98 (8th Cir. 2008) ...................................................................2

***Texas Dept. of Housing and Community Affairs v. Inclusive Communities Projects, Inc.***
    576 U.S. 519, 543 (2015) ...............................................................................7, 11

***U.S. v. South-Eastern Underwriters Association***
    322 U.S. 533 (1944) ...............................................................................................4

***West Virginia v. EPA***
    597 U.S. 697, 724 (2022) ....................................................................................11

## Statutes

11 U.S.C. § 109(b)(2) ...........................................................................................13
15 U.S.C. § 1011 - 1015 .....................................................................................1, 4
15 U.S.C. § 1011 ....................................................................................................4
15 U.S.C. § 1012(a) .............................................................................................12
15 U.S.C. § 1012(b) .........................................................................................8, 12
42 U.S.C. § 3601 *et seq.*......................................................................................2

42 U.S.C. § 3610(g)(2)(A) ...................................................................................11
88 Fed. Reg. 19,450 (March 31, 2023) ...........................................................6, 10

88 Fed. Reg. 19,451 ...................................................................................................7
88 Fed. Reg. 19,461 ...................................................................................................8
88 Fed. Reg. 19,467 ...................................................................................................8
88 Fed. Reg. 19,469 ..............................................................................................6, 10
88 Fed. Reg. 19,471 .................................................................................................12
88 Fed .Reg. 19,472 .................................................................................................12
88 Fed. Reg. 19,474 ...................................................................................................6
88 Fed. Reg. 19,476 ..............................................................................................8, 9
88 Fed. Reg. 19,480 .................................................................................................12
88 Fed. Reg. 19,481 .................................................................................................12

## **Other Authorities**

*Statement of Principles Regarding Property & Casualty Insurance Ratemaking 2* (May 1988),
    https://tinyurl.com/3dthyzh ...........................................................................5

Plitt et al., *Couch on Insurance* § 2:31 (3d ed. June 2024 Update) ...............................5

National Association of Insurance Commissioners Model 880, § 4(G)(4)-(9),
    https://content.naic.org/sites/default/files/model-law-880.pdf ...........................................6

## IDENTITY OF INTERESTS OF THE AMICI STATES

Director Dean L. Cameron of the Idaho Department of Insurance; Commissioner Troy Downing, Commissioner of Securities and Insurance, Office of the Montana State Auditor; Commissioner Tim Temple, Commissioner of the Louisiana Department of Insurance; Commissioner John F. King, Georgia Office of the Commissioner of Insurance and Safety Fire; Director Larry Dieter, Director of the South Dakota Division of Insurance; Commissioner Glen Mulready, Commissioner of the Oklahoma Insurance Department; Commissioner John Godfread, Commissioner of the North Dakota Department of Insurance; and Commissioner Mike Chaney, Commissioner of the Mississippi Department of Insurance; Commissioner Douglas Ommen, Iowa Insurance Commissioner; Commissioner of the New Hampshire Insurance Department; and Commissioner of Alabama Department of Insurance  are authorized under their respective State constitutions and laws to regulate and tax the business of insurance within their States. In addition, the State of Ohio regulates insurance through its Department of Insurance, and the Attorney General represents the Department. As such, they offer this Court a state-level view of insurance regulation and a clear perspective on the Department of Housing and Urban Development's ("HUD") Disparate Impact Rule ("Rule"), including the Rule's substantial, unnecessary, unworkable, and unrealistic interference with risk-based pricing and underwriting of homeowners insurance in contravention of the *McCarran-Ferguson Act,* 15 U.S.C. §§ 1011-1015 ("*McCarran-Ferguson*") and this Court's decision in *Doe v. Mutual of Omaha Insurance Co.,* 179 F.3d 557 (7th Cir. 1999).

## INTRODUCTION AND BACKGROUND

These *amici curiae*, responsible for regulating insurance within their respective States, join this appeal by the Property Casualty Insurers Association of America ("PCI") because Congress has assigned to the several states the authority and responsibility to regulate the business of

insurance and to protect insurance consumers under *McCarran-Ferguson*. According to this Court's decision in *Mutual of Omaha*, *McCarran-Ferguson* reverse preemption has special force as applied to actuarial determinations under state law.

Risk-based pricing and underwriting of homeowners insurance fundamentally functions by applying neutral and objective actuarial factors and analyses to arrive at rates which correspond to the risks being transferred from insureds to insurers. No State sanctions rates which are inadequate, excessive, or which unfairly discriminate by treating risks which are alike unequally. And, of course, actuarial practice does not and should not consider race or other protected characteristics in arriving at rates.

Based upon the authority of the *Fair Housing Act,* 42 U.S.C. § 3601 *et seq. ("FHA")*—a federal law not specifically related to insurance for purposes of *McCarran-Ferguson*—in 2013, HUD's Rule established federal liability for neutral practices having a discriminatory effect. PCI challenged the Rule, and in 2014, the district court initially determined the Rule was arbitrary and capricious as applied to risk-based pricing and underwriting of homeowners insurance.

However, in 2023, HUD reinstated the Rule, which PCI continues to challenge, including on the basis that it violated *McCarran-Ferguson* and *Mutual of Omaha.* Addressing the reinstated Rule*,* the district court below concluded that an expansive reading of *Mutual of Omaha* requires the conclusion that "the act of assessing whether an insurer's practices are 'actuarially sound and consistent with state law' itself violates McCarran- Ferguson, full stop." *Prop. Cas. Insurers Ass'n of Am. V. Todman*, 2024 U.S. Dist. LEXIS 53688, *37 (N.D. Ill. March 26, 2024). Facing deep skepticism whether a disparate-impact claim challenging risk-based practices could ever be viable, *Saunders v. Farmers Insurance Exchange, 537 F.3d 961,* 967-98 (8th Cir. 2008), and concluding that parsing subjective judgments from objective ones "runs perilously close to what *Mutual of Omaha* forbids[,]" the district court nevertheless concluded that *McCarran-Ferguson* preemption

should be addressed in highly-fact intensive, case-by-case adjudications in the federal courts. 2024 U.S. Dist. LEXIS at *24-25, *26-33. An appeal by PCI followed.

## SUMMARY OF ARGUMENT

HUD's Rule, as applied to risk-based pricing and underwriting of homeowner's insurance, entangles HUD, private litigants, and the federal courts in matters central to the States' regulatory authority over the business of insurance. This interference is very substantial. It ignores state-based consumer protections already in place and invites HUD and the federal courts to second-guess and ultimately overrule actuarial determinations required or permitted in every State. The Rule encourages costly and complex litigation which will drag state insurance regulators into federal litigation. The Rule also adds regulatory uncertainty via federal oversight over actuarial determinations and consumer protections which state regulators are capably addressing under *McCarran-Ferguson*. The federal act upon which HUD's Rule is predicated—the *FHA*—does not specifically relate to insurance. As such, according to *McCarran-Ferguson* and this Court's decision in *Mutual of Omaha*, this extraordinary exercise of federal regulatory authority is preempted.

Having initially determined in 2014 that HUD's Rule was arbitrary and capricious, following reinstatement of the Rule in 2023, the district court wrestled with the arguments from HUD and the Illinois amici advocating case-by-case adjudication of *McCarran-Ferguson* preemption. But the issue is not whether some states welcome this because of their own fair housing laws or policies but whether HUD's Rule interferes with or impairs state regulatory authority under *McCarran-Ferguson* and *Mutual of Omaha*, and it clearly does. Congressional recognition of state regulatory authority comes with a responsibility that cannot be abrogated to HUD and federal courts. Congress has respected and entrusted the states to regulate insurance and neither HUD nor any of the Illinois *amici* argued or submitted evidence below that the states are

incompetent to handle and enforce their fair housing laws or risk-based pricing and underwriting. Consumers of homeowners insurance are protected by state regulation and HUD's Rule is just actuarially second-guessing by another name.

The Rule violates Congressional intent as clearly expressed in *McCarran-Ferguson* and as correctly applied in *Mutual of Omaha*. Consequently, as applied to risk-based pricing and underwriting of homeowner's insurance, HUD's Rule should be deemed preempted, and the district court's contrary determination should be reversed.

## I. *McCarran-Ferguson* Embodies Congress's Considered Determination that the Regulation of the Business of Insurance and Protection of Consumers of Insurance is in the Public Interest.

State insurance regulators formed what is now the National Association of Insurance Commissioners ("NAIC"), a standard-setting organization for insurance regulation, in 1871.[1] When the Supreme Court of the United States ruled that insurance was considered interstate commerce and thus subject to Congressional oversight in 1944,[2] Congress passed *McCarran-Ferguson* in 1945,[3] broadly granting preemption to state insurance laws with limited exceptions for federal laws specifically regulating insurance. According to *McCarran-Ferguson*, "regulation . . . by the several states of the business of insurance is in the public interest[.]" 15 U.S.C. § 1011.

Having entrusted the regulation of the business of insurance to the several states, Congressional silence does not give rise to implied federal agency authority to regulate insurance. *Id.* Yet HUD has chosen to regulate the business of homeowners insurance under the authority of

---

[1] The NAIC is extremely active with national meetings, public and industry input, and enforcement coordination across the country: https://content.naic.org/150-timeline.

[2] *United States v. South-Eastern Underwriters Association*, 322 U.S. 533 (1944). Prior to this decision, it was widely believed that the federal government was excluded form insurance regulation after *Paul v. Virginia*, 75 U.S. 168 (1868).

[3] 15 U.S.C. §§ 1011-1015. It should be noted that Congress acted quickly to cure the issue; *U.S. v. South-Eastern Underwriters Association*, 322 U.S. 533 (1944), was decided in June 1944, and by March 1945, *McCarran-Ferguson* enshrined state-based consumer protection laws.

the *FHA*—a federal law not specifically related to insurance. HUD's Rule allows HUD and the federal courts to second guess and potentially reverse decisions made under the State-based system on grounds not tied to true insurance risk or within rating classes that have been reviewed and approved or sanctioned by state insurance departments. HUD's rule undermines state consumer protections through ratemaking reviews, sidesteps actuarial and underwriting realities, and threatens rate adequacy and insurance markets by displacing neutral and objective risk-based pricing and underwriting with data and analyses tied to race. HUD's Rule was created in contravention of *McCarran-Ferguson* and the fundamental realities of how homeowner's insurance works and how it has functioned for more than a century.

One set of state insurance consumer protections involves fair ratemaking based on objective, risk-based factors, applying actuarial science and the expertise of actuarial professionals whose credentialing requires that they adhere to sound actuarial principles. *See* Casualty Actuarial Society, *Statement of Principles Regarding Property & Casualty Insurance Ratemaking* 2 (May 1988), https://tinyurl.com/3dthyzh. Risk-based pricing and underwriting of homeowners insurance requires that rates not be inadequate or excessive. Rates also must not be unfairly discriminatory, i.e., risks which are alike must be treated equally. These consumer-protection principles, which guide actuarial practices nationwide, are either required or permitted in every state. Plitt et al., *Couch on Insurance* § 2:31 (3d ed. June 2024 Update); Appellant's Opening Brief, Appendix at 336-341. States do not allow rates to be inadequate because doing so threatens actuarial soundness, the financial integrity of insurers, and the insurance marketplace. States do not allow rates to be excessive because that threatens the affordability and availability of insurance. And, of course, the States require like risks to be treated equally. Every State has passed laws patterned after NAIC's Model 880, which defines unfair trade practices to include discriminatory practices by companies,

including discrimination based on racial and other protected legal classifications.[4] When HUD reinstated its Rule, it of course made clear that no State allows or could lawfully allow homeowners insurance rates or underwriting to be based on protected class considerations or racial discrimination. Reinstatement of HUD"s Discriminatory Effects Standard, 88 Fed. Reg. 19,450, 19,469 (March 31, 2023) (to be codified at 24 C.F.R. 100). The States, exercising the trust and responsibility accorded them by Congress, have consumer protections in place which address the same area regulated by HUD's Rule. Undermining state regulation in this area interferes with the current, effective state-based insurance regulation acknowledged time and again by Congress to be within the purview of the States. And because the Rule invites HUD and the federal courts to step into the shoes of the States regarding actuarial determinations central to state regulatory authority, HUD's Rule is contrary to this Court's decision in *Mutual of Omaha*.

## II.       The Rule Invites HUD and the Federal Courts to Second-Guess Actuarial Pricing and Underwriting Practices.

Homeowner's insurance by function and definition must afford equal treatment to like risks based on objective and neutral factors applying actuarial science. All states sanction risk-based pricing and underwriting practices. Appellant's Opening Brief, Appendix. at 336-341. Yet HUD's Rule invites HUD and the federal courts to scrutinize, second-guess, and ultimately judge the sound actuarial practices required or permitted by all States.[5] Step two of the Rule requires an insurer to prove that its risk-based pricing or underwriting practices are necessary to achieve one

---

[4] https://content.naic.org/sites/default/files/model-law-880.pdf. Section 4 defines unfair trade practices to include discriminatory ratemaking; Section 4(G)(4) through (9) specifically call out property risks like those addressed in the HUD Rule.

[5] Moreover, state courts, rather than federal courts, should substantively address whether *McCarran-Ferguson* reverse preemption applies. See *Ojo v. Farmers Group, Inc.*, 600 F.3d, 1201, 1204-05 (9th Cir. 2010) (en banc) (certifying the *McCarran-Ferguson* issue to the Supreme Court of Texas). The 9th Circuit recognized that determining whether FHA claims of disparate impact violated relevant and applicable state law should be determined at the state level. HUD's Rule inverts this holding by allowing federal courts to make the relevant determination concerning a matter presumptively in state domain. HUD's Reinstatement, 88 Fed. Reg. at 19,450, 19,474.

or more substantial, legitimate, nondiscriminatory interests. HUD's Reinstatement, 88 Fed. Reg. at 19,451. Such proof will necessarily involve the actuarial soundness of the challenged practices. To claim that a federal court can determine that a risk-based pricing practice has a relationship to a business interest without analyzing the actuarial soundness of the challenged practice presents a conundrum. Nowhere has HUD offered a solution to this problem, and the lower court's opinion side-steps it by focusing solely on the third step of HUD's burden shifting framework. 2024 U.S. Dist. LEXIS at *39 (7th Cir. 2024). Further, step three of the burden-shifting framework, if the insurer satisfies step two, enables HUD or other plaintiffs to prevail if it is proven that substantial, legitimate, nondiscriminatory interests supporting the challenged practice can be served by another practice that has a less discriminatory effect. HUD's Reinstatement, 88 Fed. Reg. at 19,451. This too will, of course, necessitate examination of actuarial data, methods and soundness.

Although this framework necessarily involves the federal courts in actuarial review, that intrusion is itself without foundation under *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). As PCI argues, *Inclusive Communities* cabins disparate impact to racial disparities that defendants themselves create. *Id*. at 542. And because rates are required to accurately reflect risks, "[a]ny resulting disparate impact is attributable to the state law, not a disparity that the insurer created." Appellant's Opening Brief at 57, *Property Casualty Insurers Association of America v. Adrianne Todman*, No. 24-1947 (7th Cir. Aug. 14, 2024). "Disparate-impact liability mandates the 'removal of artificial, arbitrary, and unnecessary barriers,' not the displacement of valid governmental policies." Inclusive Communities, at 540 (quoted case omitted). The Rule attempts to regulate the primary elements of an insurance contract: "spreading and underwriting of a policyholder's risk." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 211 (1979). Allowing a federal regulation, not

specifically related to the business of insurance, to govern the principal elements of an insurance contract strikes at the heart of *McCarran-Ferguson*.

HUD, when it reinstated its discriminatory effects standard, effectively conceded that its Rule will entangle the federal courts in these actuarial considerations. HUD's Reinstatement, 88 Fed. Reg. at 19,461, 19,467, 19,475 (stating that adjustments can be made if practices have a discriminatory effect and that alternative actuarially sound practices should be put in place). Attempting to show that actuarial second-guessing might comport with *McCarran-Ferguson*, HUD has asserted that the evidence in a disparate impact suit might establish that a given insurer has already considered an actuarially sound but less discriminatory alternative. *Id.* at 19,476. All of this, of course, is contrary to this Court's decision in *Mutual of Omaha*. According to *McCarran-Ferguson* and *Mutual of Omaha*, a federal statute may not be construed to "impair any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 179 F. 3d at 563, citing 15 U.S.C. § 1012(b) (internal quotes omitted). Like the federal ADA at issue in *Mutual of Omaha*, the *FHA* does not specifically relate to insurance; and, like the nondiscrimination provision of the ADA, HUD's Rule interferes with or impairs the States' insurance regimes and laws. *Cf.,* 179 F.3d at 563-64.

Risk-based pricing and underwriting practices for homeowner's insurance are based on actuarial practices designed to achieve rates which are not inadequate (threatening solvency and therefore the availability of insurance coverage), excessive (threatening affordability), or unfairly discriminatory (treating like risks unequally). This is the central focus of homeowners insurance rates and a fundamental concern of state insurance regulators, which is interfered with and impaired when HUD and the federal courts become emmeshed in evaluating and judging homeowners' insurance rates and underwriting practices. As this Court observed in *Mutual of Omaha*, it is not the business of HUD or the federal courts to regulate the insurance industry,

specifically and especially including judging actuarial soundness or compliance with state law. *Cf.*, 179 F.3d at 564. When HUD reinstated the Rule, it stated that it disagreed with *Mutual of Omaha,* opining that it was not obliged to follow the decision of a single appellate court regarding a rule having "nationwide effect. . . ." HUD's Reinstatement, 88 Fed. Reg. at 19,476. *Mutual of Omaha*, however, is binding authority in this Circuit.

### III.    The Rule and Case-by-Case Application of it Gives Rise to Unnecessary Legal Complexity, Regulatory Uncertainty, and Regulatory Costs.

HUD's Rule necessarily requires insurers to defend legitimate actuarial determinations which are reviewed and approved under state law. Because risk-based pricing and underwriting of homeowners insurance is sanctioned in every State, insurance regulators may well be compelled to defend their approvals in federal litigation; or, in the case of Illinois, the only state that does not approve rates prior to filing, to explain or address alleged discriminatory effects through market conduct examinations or enforcement actions. HUD's Rule is, after all, federal law and the district court notably discounted HUD's attempt to minimize the import of *Mutual of Omaha* "without knowing more about how disputes against insurers' risk-based practices will actually unfold in practice." 2024 U.S. Dist. LEXIS at *25. This added federal check on insurers clearly creates regulatory uncertainty.

The Illinois *amici* argued below that to trigger *McCarran-Ferguson* all that is required is for a state to say that disparate impact is not their own state's policy. Dist. Ct. Dkt. 309. If only state housing laws, HUD's Rule, and federal regulation and litigation were so simple. HUD states that "to ensure compliance, a regulated entity may wish to examine whether a facially neutral policy or practice causes an unjustified discriminatory effect, as defined by the regulation." It is difficult to see how a regulated insurer would accomplish compliance without consideration of protected traits in rating and underwriting. HUD's Reinstatement, 88 Fed. Reg. 19,450, 19,469.

But HUD cautions that "self-examination is encouraged." *Id.* That presupposes that such federal encouragement is needed. As discussed above, basing rates or underwriting on protected traits is flatly illegal in all states. On top of this regulatory uncertainty, the district court's failure to preempt HUD's Rule also imposes unnecessary legal complexity and regulatory costs. Indeed, the decision below characterizes the *McCarran-Ferguson* problem resulting from HUD's Rule as "tricky" and "costly." 2024 U.S. Dist. LEXIS at *32, *42, *44. Addressing HUD's assertion that risk-based practices involve subjective judgment, the district court initially noted that "expecting federal courts, rather than state insurance commissioners, to draw this line between subjectivity and objectivity runs perilously close to what *Mutual of Omaha* forbids." 2024 U.S. Dist. LEXIS at *26. Ultimately, however, the district court concluded that the federal courts should walk this perilous line and, we respectfully submit, to brazenly cross it by sanctioning the federal courts' involvement in parsing out "subjective discretion" because in the district court's view there probably is "always some slippage at the margins where subjectivity (and, potentially, bias) creeps in." 2024 U.S. Dist. LEXIS at *40-41, citing 88 Fed. Reg. at 19,469. According to the decision below, there are "countless ways" challenges to insurer's methods may arise in the future and "[d]rawing this line will always require highly fact-intensive-analysis." 2024 U.S. Dist. LEXIS at 41. This federal regulatory regime is incompatible with *McCarran-Ferguson*.

Because the *FHA* is not specifically related to insurance and is silent regarding disparate impact of risk-based pricing and underwriting, HUD's Rule is not owed deference. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). The issue is not whether HUD's Rule might possibly comply with *McCarran-Ferguson*, but whether it actually comports with *McCarran-Ferguson*. According to the text of *McCarran-Ferguson* and this Court's decision in *Mutual of Omaha*, a federal agency Rule striking at the heart of state regulatory authority over the business of insurance is preempted. It is for the courts, not HUD, to decide the "single, best meaning" of

federal statutes. *Loper*, at 2266. Especially considering *Loper*, the district court's adoption of HUD's highly fact-intensive, case-by-case, approach to adjudication of *McCarran-Ferguson* preemption issues—as applied to risk-based pricing and underwriting—is a weak rationale upon which to avoid *McCarran-Ferguson* preemption and the correct application of *McCarran-Ferguson* as applied to the *FHA*. The court's decision also fails to heed *Mutual of Omaha's* warning that if *McCarran-Ferguson* is not applied, the federal courts will find themselves regulating the insurance industry. 179 F.3d at 564. As PCI argues on appeal, HUD's Rule and district court's analysis also inject race into housing decisions in contravention of *Inclusive Communities*, 576 U.S. at 543. Appellant's Opening Brief, *supra*, at 60-61. The district court's decision now calls upon the federal courts to "sift out objective and necessary risk-based practices from those that are unsupported by actuarial science or replaceable by a less discriminatory alternative." 2024 U.S. Dist. LEXIS at *47. This indeterminate, complex, and ironically subjective assignment of insurance regulatory authority to HUD and the federal courts cannot be squared with *Loper, Inclusive Communities*, *McCarran-Ferguson* and *Mutual of Omaha*. As PCI observes, HUD has also arrogated to itself an authority to "substantially restructure" the insurance industry without Congressional authorization in contravention of *West Virginia v. EPA*, 597 U.S. 697, 724 (2022). Appellant's Opening Brief, *supra*, at 27.

State-regulated insurers who now fall under the purview of HUD's Rule are well-advised to pay attention because HUD's authority is not without teeth. As HUD has pointed out, the Secretary of HUD is required to immediately issue a charge if there is reasonable cause to believe a discriminatory housing practice has occurred or is about to occur. HUD's Reinstatement, 88 Fed. Reg. at 19,471, citing 42 U.S.C. § 3610(g)(2)(A). Although risk-based pricing does not facially consider protected characteristics, all of this regulatory oversight is justified, according to HUD, because it is "possible" for plaintiffs to prove discriminatory effects and less discriminatory

alternatives in the context of risk-based pricing and underwriting. HUD's Reinstatement, 88 Fed. Reg. at 19,472. HUD also suggests that its Rule encourages insurers to review "publicly available datasets or studies . . . to see if their practices cause or predictably will cause a discriminatory effect." *Id.* at 19,480. This suggestion inherently requires an insurer to review their actuarial determinations for disparate impact, demonstrating the Rule's encroachment into state regulation. Although HUD claims the Rule does not require insurers to collect demographic data, it cautions that even in the inapposite lending industry collection of demographic data and self-testing does not absolve lenders of potential liability. *Id*. at 19,480-81.

The regulatory uncertainty caused by the Rule is exacerbated by the case-by-case approach embraced by HUD and district court, which will encourage a hodgepodge of federal court rulings, adding legal complexity and uncertainty to federal court proceedings wherever such suits are brought. *McCarran-Ferguson*, and the federalism principles upon which it is based, should not be construed in this way. HUD emphasizes that the *FHA* was intended to apply nationwide, while ignoring that *McCarran-Ferguson* also applies broadly to preclude a construction of a federal law, not specifically related to insurance, that impairs "*any* law enacted by *any* state . . . ." 15 U.S.C. § 1012(b) (emphasis added). *McCarran-Ferguson* applies across the "the laws of the several states." 15 U.S.C. § 1012(a). Congress has given the states--all states--regulatory authority over the business of insurance unless it decides to enact federal legislation specifically related to insurance. And, as this Court concluded in *Mutual of Omaha*, "[e]ven if the formal criteria [for actuarial soundness] are the same under federal and state law, displacing their administration into federal court—requiring a **federal** court to decide whether an insurance policy is consistent with state law—obviously would interfere with the administration of state law." 179 F. 2d at 564 (emphasis in original). Here, HUD's interference with risk-based pricing and underwriting of homeowners insurance is likewise obvious.

The *Mutual of Omaha* holding is also supported by *Humana Inc. v. Forsyth,* 525 U.S. 299 (1999). *Mutual of Omaha* relies on *Humana*, 179 F.3d at 564, which addressed the narrow question whether RICO's *remedial* provisions were consonant with *McCarran-Ferguson*, 525 U.S. at 305. That some states have similar housing policies dodges the *McCarran-Ferguson* issue. HUD's and the district court's fact-intensive or case-by-case framework is just a federal license to second-guess state-based actuarial practices and decisions. *Humana* did not concern actuarial practices central to state regulatory regimes. Congress's recognition of the States' substantive authority over the business of insurance comes with a regulatory responsibility which cannot be abrogated away to HUD and the federal courts.

## IV. HUD's Rule Undermines Insurer Solvency, a Primary Concern of State-Based Regulation.

Beyond the *McCarran-Ferguson* reverse preemption and undermining of state-based regulation, a fundamental responsibility of state insurance regulators is to ensure insurance company solvency through comprehensive regulation, including the establishment of rates that are not inadequate. State insurance regulators have model regulations enacted in every state regarding the receivership and winddown of insurance companies which cannot file for federal bankruptcy[6] but must be conserved, rehabilitated, or liquidated at the state level alone. Rates, of course, are a critical component of solvency and the stability of insurance markets.

Due to the foregoing, rates must be based on neutral risk and loss-based factors and actuarial analyses rather than protected classes. The risk of house fires, leaking or broken pipes, wildfires, floods, hurricanes or tornadoes need to be based on neutral, objective, risk and loss data and actuarial science considering countrywide, regional, state and local data. If rates are inadequate the financial integrity of insurers is jeopardized. This is not hypothetical. The business of

---

[6] 11 U.S.C. § 109(b)(2).

homeowners insurance fundamentally requires rates or premiums which accurately measure and predict losses and risks. HUD's Rule actually undermines one of its primary goals of ensuring the affordability and availability of homeowners insurance. HUD's Rule makes this already difficult task--a state regulatory responsibility under *McCarran-Ferguson*--more difficult to achieve.

HUD and the Illinois amici argued below that HUD's Rule merely reinforces or compliments the fair housing laws of some states with little or no impact on state regulatory authority. However, the interference here is real and substantial. The fair housing laws of the States do not require or allow rating or underwriting practices for homeowners insurance that treat alike risks differently. And, as PCI points out, the purported "panoply" of decisions supporting case-by-case adjudication of *McCarran-Ferguson* issues cited by HUD and the Illinois amici, and relied upon by the district court, involve inapposite claims handling and other practices, are distinguishable, and do not support running afoul of *McCarran-Ferguson*. Appellant's Opening Brief, *supra*, at 45-47. Even states that employ disparate impact liability in the insurance context will still face the prospect of having their actuarial decisions second-guessed. This, according to *Mutual of Omaha*, contravenes *McCarran-Ferguson* even when the state and federal criteria are the same. *Mutual of Omaha*, 179 F.3d at 564; Appellant's Opening Brief, *supra,* at 50-51. Unlike the cases relied upon by the district court, this case concerns whether HUD's Rule interferes with or impairs risk-based pricing and underwriting, applying neutral, objective factors and actuarial methods and science. As such, according to *Mutual of Omaha*, the Rule is preempted by *McCarran-Ferguson*.

## CONCLUSION

For the reasons stated above, these *amici curiae*, responsible for the regulation of insurance within their States, urge this Court to reverse the district court's decision and preserve this insurance regulatory authority to the States, where, according to Congress, it belongs.

*Respectfully submitted this 21st day of August, 2024.*

/s/ *John C. Keenan*
JOHN C. KEENAN
LEAD DEPUTY ATTORNEY
GENERAL
ATTORNEY GENERAL RAÙL
LABRADOR
IDAHO DEPARTMENT OF
INSURANCE
700 W. State Street
Boise, ID 83720
(208) 334-4283
john.keenan@doi.idaho.gov

/s/ *J. David Caldwell*
J. DAVID CALDWELL
EXECUTIVE COUNSEL
LOUISIANA DEPARTMENT
OF INSURANCE
1702 North Third St.
P.O. Box 94214
Baton Rouge, LA 70804-9214
(225) 342-4673
David.Caldwell@ldi.la.gov

/s/ *Frank Marnell*
FRANK MARNELL
SENIOR LEGAL COUNSEL
DIVISION OF INSURANCE
SOUTH DAKOTA DEPARTMENT
OF LABOR AND REGULATION
125 S. Euclid Ave.
Pierre, SD 57501
(605) 773-3563
Frank.Marnell@state.sd.us

/s/ *Johannes Palsgraaf*
JOHANNES PALSGRAAF
GENERAL COUNSEL
NORTH DAKOTA INSURANCE
DEPARTMENT
600 E. Boulevard Ave.
Bismarck, ND 58505
(701) 328-2440
jpalsgraaf@nd.gov

/s/ *Kate McGrath Ellis, Mark Mattioli*
KATE MCGRATH ELLIS
CHIEF LEGAL COUNSEL
MARK MATTIOLI
SENIOR LEGAL COUNSEL
MONTANA COMMISSIONER OF
SECURITIES AND INSURANCE
840 Helena Ave.
Helena, MT 59601
(406) 444-2040
Kate.Ellis@mt.gov
mark.mattioli@mt.gov

/s/ *Jeremy Betts*
JEREMY BETTS
EXECUTIVE COUNSEL
OFFICE OF COMMISSIONER OF
INSURANCE AND SAFETY FIRE
2 Martin Luther King Jr. Dr.
West Tower, Suite 792
Atlanta, GA 30334
(404) 651-6501
jbetts@oci.ga.gov

/s/ *Kimberly C. Hunter*
KIMBERLY C. HUNTER
GENERAL COUNSEL
OKLAHOMA INSURANCE
DEPARTMENT
400 NE 50th St.
Oklahoma City, OK 73105
(405) 522-6335
Kim.hunter@oid.ok.gov

/s/ *Kimberly Causey*
KIMBERLY CAUSEY
CHIEF OF STAFF
COMMISSIONER MIKE CHANEY
MISSISSIPPI INSURANCE
DEPARTMENT
P.O. Drawer 79
Jackson, MS 39201
(601) 359-3577
Kim.Causey@mid.ms.gov

/s/ Dave Yost
DAVE YOST
OHIO ATTORNEY GENERAL
T. ELLIOT GAISER
SOLICITOR GENERAL
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466.8980
thomas.gaiser@ohioago.gov


/s/ Christopher G. Bond
ATTORNEY GENERAL JOHN M.
FORMELLA
CHRISTOPHER G. BOND
ASSOCIATE ATTORNEY
GENERAL
NEW HAMPSHIRE INSURANCE
DEPARTMENT
21 S Fruit St, Ste. 14
Concord, NH 03301
christopher.g.bond@doj.nh.gov


August 21, 2024

/s/ Eric Wessan
ATTORNEY GENERAL BRENNA BIRD
ERIC WESSAN
SOLICITOR GENERAL
ATTORNEYS FOR
DOUGLAS M. OMMEN
IOWA INSURANCE COMMISSIONER
1963 Bell Ave
Des Moines, IA 50315
(515) 823-9117
eric.wessan@ag.iowa.gov


/s/ J. Fairley McDonald, III
J. FAIRLEY MCDONALD, III
DEPUTY ATTORNEY GENERAL
ALABAMA DEPARTMENT OF
INSURANCE
201 Monroe Street
Montgomery, Alabama 36104
(334) 241-4120
john.mcdonald@insurance.alabama.gov

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Circuit Rule 32(c) in that, according to the word-count function of the word-processing system used to generate the brief (Microsoft Word), the brief contains 5830 words.

    /s/ John C. Keenan
    John C. Keenan

**CERTIFICATE OF SERVICE**

On August 21, 2024, I filed the foregoing using the CM/ECF system, which effected service on all registered counsel.

/s/ *John C. Keenan*
John C. Keenan