No. 24-1947
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
_____

PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA,

Plaintiff-Appellant,

v.

ADRIANNE TODMAN, Acting Secretary of the Department of Housing
and Urban Development, and UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT,

Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
No. 1:13-cv-08564
_____

**BRIEF FOR APPELLEES**
_____

MICHAEL D. GRANSTON
 *Deputy Assistant Attorney*
 *General*

*Of counsel*:

MORRIS PASQUAL
 *Acting United States Attorney*

BEN KLUBES
 *Principal Deputy General Counsel*
JEANINE WORDEN
 *Associate General Counsel for*
 *Fair Housing*
AYELET WEISS
 *Assistant General Counsel for*
 *Fair Housing*
JULIA DYKSTRA
PAUL OSADEBE
 *Trial Attorneys*
 *U.S. Department of Housing*
 *and Urban Development*

 MICHAEL S. RAAB
 (202) 514-4053
 STEPHANIE R. MARCUS
 *(202) 514-1633*
 *Attorneys, Appellate Staff*
 Civil Division, Room 7539
 U.S. Department of Justice
 950 Pennsylvania Ave., N.W.
 Washington, D.C. 20530-0001
 stephanie.marcus@usdoj.gov

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ...................................................................... 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE ................................................................ 3

    A.    Statutory Framework .................................................................3

        1.    The Fair Housing Act ...............................................................3

        2.    The McCarran-Ferguson Act ...............................................5

    B.    Regulatory Background and Prior Proceedings ...........................6

        1.    2013 Rule ..............................................................................6

        2.    District Court 2014 Decision ................................................9

        3.    Supreme Court's Decision in *Inclusive Communities* ........12

        4.    HUD's 2016 Supplement and District Court 2017 Order ...............................................................................14

        5.    2020 and 2023 HUD Rules .................................................16

        6.    District Court 2024 Decision ..............................................21

SUMMARY OF ARGUMENT ........................................................... 23

STANDARD OF REVIEW ................................................................ 26

ARGUMENT ..................................................................................... 27

I.      The District Court Properly Dismissed PCI's McCarran-
        Ferguson Claim. ......................................................................... 27

        A.      The District Court Correctly Dismissed PCI's McCarran-
                Ferguson Claim As Unripe. ............................................................27

        B.      HUD's Discriminatory-Effects Rule Does Not Violate The
                McCarran-Ferguson Act. .................................................................36

                1.      The District Court Properly Determined That PCI's
                        McCarran-Ferguson Claim Is A Facial Challenge. ...........36

                2.      PCI's Claim Fails On The Merits. .......................................41

II.     HUD's Denial Of An Exemption For Homeowners Insurers'
        Risk-Based Pricing And Underwriting Practices Was
        Reasonable And Not Arbitrary And Capricious. .................................. 50

III.    HUD's Burden-Shifting Framework Is Consistent With The
        FHA As Interpreted In *Inclusive Communites*. ...................................... 62

CONCLUSION ................................................................................................... 70

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page(s)**</span>

*A Woman's Choice-East Side Women's Clinic v. Newman,*
  305 F.3d 684 (7th Cir. 2002) ...................................................................39

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) .............................................................................27

*Andrus v. Glover Constr. Co.,*
  446 U.S. 608 (1980) .............................................................................52

*Association of Private Sector Colls. & Univs. v. Duncan,*
  681 F.3d 427 (D.C. Cir. 2012) ........................................................ 39-40

*Avenue 6E Invs. LLC v. City of Yuma,*
  818 F.3d 493 (9th Cir. 2016) ........................................................ 13, 63

*Betsey v. Turtle Creek Assocs.,*
  736 F.2d 983 (4th Cir. 1984)...................................................................8

*California Coastal Comm'n v. Granite Rock Co.,*
  480 U.S. 572 (1987) .............................................................................40

*Center for Individual Freedom v. Madigan,*
  697 F.3d 464 (7th Cir. 2012)................................................................38

*Charleston Hous. Auth. v. U.S. Dep't of Agric.,*
  419 F.3d 729 (8th Cir. 2005)...................................................................7

*Commonwealth Plaza Condo. Ass'n v. City of Chicago,*
  693 F.3d 743 (7th Cir. 2012)....................................................... 26-27

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
  447 U.S. 102 (1980) .............................................................................51

*Dehoyos v. Allstate Corp.*,
345 F.3d 290 (5th Cir. 2003)..........................................30, 43, 44, 47, 50, 54, 56

*Doe v. Mutual of Omaha Ins. Co.*,
179 F.3d 557 (7th Cir. 1999)..................................................... 45, 46, 47

*Ellis v. City of Minneapolis*,
860 F.3d 1106 (8th Cir. 2017)............................................................64

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ..................................................................... 50, 51

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n*,
508 F.3d 366 (6th Cir. 2007)..........................................................7-8

*Griggs v. Duke Power Co.*,
401 U.S. 424 (1971) ...................................................................... 13, 66

*Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*,
335 F.3d 607 (7th Cir. 2003)..............................................................39

*Humana Inc. v. Forsyth*,
525 U.S. 299 (1999) ......................................... 6, 24, 25, 28, 41, 44, 48

*Huntington Branch, NAACP v. Town of Huntington*,
844 F.2d 926 (2d Cir.), *aff'd in part per curiam*, 488 U.S. 15 (1988).................7

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
920 F.3d 890 (5th Cir. 2019)....................................................... 13, 63

*Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*,
747 F.3d 275 (5th Cir. 2014)..............................................................13

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) ..................................................................... 37, 38

*Jones v. Travelers Cas. Ins. Co. of Am.*,
  No. C-13-02390, 2015 WL 5091908 (N.D. Cal May 7, 2015) ........................54

*Langlois v. Abington Hous. Auth.*,
  207 F.3d 43 (1st Cir. 2000) .................................................................7

*Lumpkin v. Farmers Group*,
  No. 05-2868 Ma/V, 2007 WL 6996777 (W.D. Tenn. July 6, 2007) ..............55

*Mackey v. Nationwide Ins. Cos.*,
  724 F.2d 419 (4th Cir. 1984)...............................................................7

*Massachusetts Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*,
  496 F. Supp. 3d 600 (D. Mass. 2020) ..................................................16

*Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*,
  558 F.2d 1283 (7th Cir. 1977)..............................................................7

*Mhany Mgmt., Inc. v. County of Nassau*,
  819 F.3d 581 (2d Cir. 2016) ........................................................ 13, 63

*Moody v. NetChoice, LLC*,
  144 S. Ct. 2383 (2024) ........................................................... 38, 39, 40

*Mountain Side Mobile Estates P'ship v. Secretary of Hous. & Urban Dev.*,
  56 F.3d 1243 (10th Cir. 1995).............................................................8

*NAACP v. American Family Mut. Ins. Co.*,
  978 F.2d 287 (7th Cir. 1992)....................................... 6, 7, 29, 33, 43, 44, 47, 49

*National Ass'n of Mutual Ins. Cos. v. HUD*,
  693 F. Supp. 3d 20 (D.D.C. 2023), *appeal docketed*,
  No. 23-5275 (D.C. Cir. Nov. 17, 2023) ............................... 35, 38, 65

*National Fair Hous. All. v. Travelers Indem. Co.*,
  261 F. Supp. 3d 20 (D.D.C. 2017) ......................................................54

*National Fair Hous. All., Inc. v. Prudential Ins. Co. of Am.*,
  208 F. Supp. 2d 46 (D.D.C. 2002) ....................................................62

*National Park Hosp. Ass'n v. Department of the Interior*,
  538 U.S. 803 (2003) ......................................................................27

*Nationwide Mut. Ins. Co. v. Cisneros*,
  52 F.3d 1351 (6th Cir. 1995)............................................................7

*Ohio Forestry Ass'n v. Sierra Club*,
  523 U.S. 726 (1998) .................................................................. 34, 36

*Ojo v. Farmers Grp. Inc.*,
  600 F.3d 1205 (9th Cir. 2010)..................................................... 7, 29, 43

*Reno v. Flores*,
  507 U.S. 292 (1993) ......................................................................39

*Resident Advisory Bd. v. Rizzo*,
  564 F.2d 126 (3d Cir. 1977)..............................................................7

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
  903 F.3d 415 (4th Cir. 2018)...................................................... 13, 52, 63

*Saunders v. Farmers Ins. Exch.*,
  440 F.3d 940 (8th Cir. 2006)................................................ 29, 31, 43, 48

*Saunders v. Farmers Ins. Exch.*,
  537 F.3d 961 (8th Cir. 2008)............................................................48

*Seekins v. CHEP USA*,
  20 F.4th 345 (7th Cir. 2021) ............................................................27

*Southwest Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
  17 F.4th 950 (9th Cir. 2021) ...................................................... 14, 64, 65

*Spirt v. Teachers Ins. & Annuity Ass'n*,
    691 F.2d 1054 (2d Cir. 1982)................................................................59

*Stowe v. Rybroek*,
    114 F.4th 630 (7th Cir. 2024) ..........................................................39

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
    576 U.S. 519 (2015) ................................ 2, 4, 5, 12, 13, 23, 26, 52, 64, 66, 68, 69

*Toilet Goods Ass'n v. Gardner*,
    387 U.S. 158 (1967) ..........................................................................31

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) ............................................................................52

*United States v. Salerno*,
    481 U.S. 739 (1987) ................................................................ 10, 38, 39

*Viens v. America Empire Surplus Lines Ins. Co.*,
    113 F. Supp. 3d 555 (D. Conn. 2015)................................... 41, 54, 59

*Wards Cove Packing Co. v. Atonio*,
    490 U.S. 642 (1989) ..........................................................................67

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ..........................................................................44

*Wisconsin Cent., Ltd. v. Shannon*,
    539 F.3d 751 (7th Cir. 2008)............................................................30

**Statutes:**

Fair Housing Act,
    42 U.S.C. §§ 3601-3619.....................................................................3
    42 U.S.C. § 3601 ................................................................................3
    42 U.S.C. § 3604(a) ...........................................................................4
    42 U.S.C. § 3604(b) ...........................................................................4

42 U.S.C. § 3605(a) ...................................................4

42 U.S.C. § 3605(c)................................................ 5, 51

42 U.S.C. § 3607(b)(1)........................................... 5, 51

42 U.S.C. § 3607(b)(4)........................................... 5, 51

42 U.S.C. § 3608(a) ...................................................6

42 U.S.C. § 3610 ......................................................45

42 U.S.C. § 3612 ......................................................45

42 U.S.C. § 3614a ................................................ 6, 45

15 U.S.C. § 1012(b)................................. 6, 9, 23, 28, 29, 41

15 U.S.C. §§ 1011-1015 ...........................................5

28 U.S.C. § 1291.......................................................2

28 U.S.C. § 1331.......................................................1

**Regulations:**

24 C.F.R. § 100.500(a) ............................................4

24 C.F.R. § 100.500(b) ...........................................49

**Rule:**

Fed. R. App. P. 4(a)(1)(B)........................................1

**Other Authorities:**

54 Fed. Reg. 3232 (Jan. 23, 1989)..............................7

78 Fed. Reg. 11,460 (Feb. 15, 2013) ......................... 2, 7, 8, 9, 13, 52, 66

81 Fed. Reg. 69,012 (Oct. 5, 2016) .........................14

84 Fed. Reg. 42,854 (Aug. 19, 2019)........................16

85 Fed. Reg. 60,288 (Sept. 24, 2020)................................................ 14, 16

86 Fed. Reg. 33,590 (June 25, 2021) ......................................................16

88 Fed. Reg. 19,450 (Mar. 31, 2023) .................... 2, 17, 18, 19, 20, 25, 32, 34, 35, 42, 45, 49, 52, 53, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 66, 67, 68, 69

# JURISDICTIONAL STATEMENT

**1.** Plaintiff-appellant Property Casualty Insurers Association of America's (PCI) jurisdictional statement with respect to the district court's jurisdiction is not complete and correct. PCI asserts (Br.5) that the district court had jurisdiction over its claims against defendants-appellees the Acting Secretary of Housing and Urban Development and the United States Department of Housing and Urban Development (collectively, HUD) under 28 U.S.C. § 1331. However, the district court properly dismissed PCI's claim that application of the challenged HUD final rule to homeowners insurance violates the McCarran-Ferguson Act for lack of subject matter jurisdiction because it was not ripe. *See* Appendix (App.) 1, 25-33. The district court held that PCI had standing with respect to its remaining claims and that such claims were ripe for review. App.33-39, 89-95. HUD does not contest those jurisdictional holdings on appeal.

**2.** PCI's jurisdictional statement is complete and correct with respect to this Court's jurisdiction over the appeal. The district court entered a final judgment in favor of HUD on March 26, 2024. App.126. PCI filed a timely notice of appeal under Fed. R. App. P. 4(a)(1)(B) on May 24, 2024.

App.448.  This Court has jurisdiction over this appeal of the district court's final judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

In this case, PCI initially filed a pre-enforcement challenge to HUD's 2013 final rule, in which the agency adopted a three-step burden-shifting approach to determining discriminatory-effects liability under the Fair Housing Act (FHA or Act).  78 Fed. Reg. 11,460 (Feb. 15, 2013) (2013 Rule) App.152-74.  PCI subsequently filed a Second Amended Complaint, which added identical claims challenging HUD's 2023 final rule, 88 Fed. Reg. 19,450 (Mar. 31, 2023) (2023 Rule), App.175-225.  The 2023 Rule, *inter alia*, reaffirmed adoption of the three-step burden-shifting approach set forth in the 2013 Rule, addressed the Supreme Court's decision in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.* (*Inclusive Communities*), 576 U.S. 519 (2015), and responded to a new round of public comments.  PCI's claims challenge the 2023 Rule, which is now the operative HUD rule governing FHA discriminatory-effects liability.

The issues presented are:

**1. a.**  Whether the district court properly dismissed PCI's claim that application of the 2023 Rule to homeowners insurers' pricing and

underwriting practices violates the McCarran-Ferguson Act for lack of subject matter jurisdiction because it was unripe; and

**b.** Whether, even if this Court holds that the claim is ripe, HUD is entitled to judgment on the merits.

**2.** Whether the district court correctly held that HUD's denial of an exemption from discriminatory-effects liability under the FHA for homeowners insurers' risk-based pricing and underwriting practices was reasonable and not arbitrary and capricious.

**3.** Whether the district court properly granted summary judgment to HUD on PCI's claim that the 2023 Rule is inconsistent with limitations on discriminatory-effects liability in *Inclusive Communities*.

## STATEMENT OF THE CASE

### A. Statutory Framework

#### 1. The Fair Housing Act

Congress enacted the FHA, 42 U.S.C. §§ 3601-3619, "to provide, within constitutional limitations, for fair housing throughout the United States." *Id*. § 3601. To that end, the FHA makes it unlawful, among other things, to:

3

refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

*Id.* § 3604(a).  The FHA further prohibits "discriminat[ion] against any person . . . in the provision of services or facilities in connection" with the sale or rental of a dwelling "because of" a prohibited basis.  *Id.* § 3604(b).  In addition, the FHA makes it unlawful:

for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin."

*Id.* § 3605(a).  As the Supreme Court has held, the FHA's proscriptions apply both to intentional acts of discrimination and to facially neutral acts that have an unjustified discriminatory effect.[1]  *See Inclusive Communities*, 576 U.S. 519, 532–35 (2015).

---

[1] HUD regulations use the term "discriminatory effect" and explain that "[a] practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of" a protected trait.  24 C.F.R. § 100.500(a).  *Inclusive Communities* involved a claim of disparate impact—a type of discriminatory effect—and used the term "disparate impact."  *See* 576 U.S. at 524.

Congress enacted three express exemptions from liability under the FHA "that assume the existence of disparate-impact claims." *Inclusive Communities*, 576 U.S. at 537.  First, Congress specified that "[n]othing in [the FHA] prohibits a person engaged in the business of furnishing appraisals of real property to take into consideration factors other than race, color, religion, national origin, sex, handicap, or familial status."  42 U.S.C. § 3605(c).

Second, Congress made clear that "[n]othing in [the FHA] prohibits conduct against a person because such person has been convicted by any court of competent jurisdiction of the illegal manufacture or distribution of a controlled substance."  42 U.S.C. § 3607(b)(4).  And finally, Congress provided that "[n]othing in [the FHA] limits the applicability of any reasonable . . . restrictions regarding the maximum number of occupants permitted to occupy a dwelling." *Id*. § 3607(b)(1).

## 2.  The McCarran-Ferguson Act

The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, provides that no federal law "shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance" unless that federal law "specifically relates to the business of

insurance."  *Id*. § 1012(b).  As the Supreme Court has made clear, however, "[w]hen federal law is applied in aid or enhancement of state regulation, and does not frustrate any declared state policy or disturb the State's administrative regime, the McCarran–Ferguson Act does not bar the federal action."  *Humana Inc. v. Forsyth*, 525 U.S. 299, 303 (1999).  Thus, for example, under the McCarran-Ferguson Act, federal and state laws that are "substantively identical but differ in penalty do not conflict with or displace each other."  *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 295-97 (7th Cir. 1992).  Rather, the relevant question in determining whether the McCarran-Ferguson Act preempts application of a federal law like the FHA that does not specifically relate to insurance is whether such application would "'invalidate, impair, or supersede'" application of a particular state insurance law.  *See id*. at 295 (quoting 15 U.S.C. § 1012(b)).

## B. Regulatory Background and Prior Proceedings

### 1. 2013 Rule

Congress expressly granted HUD broad authority to implement the FHA and to issue regulations interpreting it.  *See* 42 U.S.C. §§ 3608(a), 3614a. Exercising that authority, HUD issued regulations in 1989 formalizing its interpretation that the FHA applies to homeowners insurance, *see* 54 Fed.

Reg. 3232, 3285 (Jan. 23, 1989) (1989 Rule). Following HUD's issuance of the

1989 Rule, this Court and two other courts of appeals upheld the rule in

recognizing that the FHA applies to homeowners insurance. *See, e.g.*,

*NAACP*, 978 F.2d at 300–01; *Ojo v. Farmers Grp. Inc.*, 600 F.3d 1205, 1208 (9th

Cir. 2010) (en banc) (per curiam); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d

1351, 1360 (6th Cir. 1995); *but cf. Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419,

423 (4th Cir. 1984) (pre-1989 Rule case holding that FHA excluded insurance).

In 2013, HUD published a final rule formally promulgating its

longstanding interpretation that the FHA encompasses discriminatory-effects

claims. 78 Fed. Reg. 11,460 (2013 Rule), App. 152-74. By that time, 11 courts of

appeals had held that the FHA encompasses discriminatory-effects claims

and had adopted various burden-shifting frameworks and balancing tests for

determining discriminatory-effects liability under the Act.[2] In the 2013 Rule,

---

[2] This court applied a four-factor balancing-test, *see Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977); several other courts adopted a three-part burden-shifting approach, *see, e.g., Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49–50 (1st Cir. 2000); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 939 (2d Cir.), *aff'd in part per curiam*, 488 U.S. 15 (1988); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148–49 (3d Cir. 1977); *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 740–42 (8th Cir. 2005); two adopted a hybrid burden-shifting and balancing approach, *Graoch Assocs. #33, L.P. v.*

HUD adopted the three-step burden-shifting approach of the majority of courts of appeals, providing a consistent nationwide framework for determining discriminatory-effects liability. *See* App.152-74.

Under that approach, the plaintiff or charging party first has the "burden of proving that a challenged practice caused or predictably will cause a discriminatory effect." 78 Fed. Reg. at 11,482, App.174. Second, if that burden is met, the defendant or respondent then has the "burden of proving that the challenged practice is necessary to achieve one or more [of its] substantial, legitimate, nondiscriminatory interests." *Id*. If step two is satisfied, the burden would shift back to the plaintiff or charging party to "prov[e] that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect." *Id*.

---

*Louisville/Jefferson Cty. Metro Human Relations Comm'n*, 508 F.3d 366, 373 (6th Cir. 2007); *Mountain Side Mobile Estates P'ship v. Secretary of Hous. & Urban Dev.*, 56 F.3d 1243, 1252, 1254 (10th Cir. 1995); and one adopted a burden-shifting approach for private defendants and a balancing test for public defendants, *see Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 n.5 (4th Cir. 1984).

In the 2013 Rule, HUD also responded to comments from insurers objecting to application of discriminatory-effects liability to the insurance industry.  78 Fed. Reg. at 11,474-75, App.166-67.  HUD noted that an insurance policy or practice with a discriminatory effect "may still be legal if supported by a legally sufficient justification," and that the Rule provides a mechanism for distinguishing between "unnecessary barriers proscribed by" the FHA and "valid policies and practices crafted to advance legitimate interests."  *Id.* at 11,475, App.167 (quotation marks omitted).  HUD further made clear that the 2013 Rule "does not alter the instruction of" the McCarran-Ferguson Act, which bars federal laws from being "construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance," 15 U.S.C. § 1012(b), "or its application as described in" case law, which "depends on the facts at issue and the language of the relevant State law."  78 Fed. Reg. at 11,475, App.167.

## 2.   District Court 2014 Decision

On November 27, 2013, PCI filed the present action challenging the 2013 Rule under the Administrative Procedure Act (APA).  Dkt.1.  PCI alleged that application of the 2013 Rule to homeowners insurance violated the McCarran-Ferguson Act and that the burden-shifting approach HUD

adopted was contrary to law. *Id*. at 31-33, 38. In addition, PCI claimed that HUD's refusal to exempt homeowners insurance from discriminatory-effect liability in the 2013 Rule was arbitrary and capricious because HUD failed to sufficiently address concerns about application of the burden-shifting framework to homeowners insurance and failed to adequately respond to comments regarding the McCarran-Ferguson Act and the filed-rate doctrine. *Id*. at 33-38.

HUD moved to dismiss PCI's claims for lack of jurisdiction, and the parties filed cross-motions for summary judgment. App.3. The district court dismissed PCI's claim that the 2013 Rule exceeded HUD's authority in light of the McCarran-Ferguson Act as unripe. At the outset, the court agreed with HUD that PCI's McCarran-Ferguson claim presented a facial challenge to the 2013 Rule. App.21-25. As the court explained, PCI "challenges a broad range of potential applications of the Rule without relying on the facts of any particular application." App.21. Accordingly, that PCI's challenge was limited to the homeowners insurance context did not convert it into an as-applied challenge. App.21-22. The court also held that the "no set of circumstances" standard that originated in *United States v. Salerno*, 481 U.S. 739, 745 (1987), under which a facial challenge will

succeed only when there is "no set of circumstances" in which the statute or regulation at issue would be valid, governed PCI's claim. App.22-25.

The district court concluded that PCI's McCarran-Ferguson Act claim was unripe. App.25-33. As the court explained, absent a "concrete dispute regarding a particular insurance practice" and a particular set of state laws, it could "only speculate about what types of disparate impact claims HUD or private plaintiffs may assert against insurers and whether the McCarran-Ferguson Act will preclude those claims." App.28-29. The court further found that PCI had failed to establish that withholding review would cause its members hardship. App.31-32. The court observed that any burden imposed by litigating case-by-case does not generally "justify judicial review of an otherwise unripe claim," and explained that it was not "in a position to determine whether the McCarran-Ferguson Act will necessarily preempt all disparate impact claims based on the provision or pricing of homeowners insurance." *Id*.

The district court also granted summary judgment to HUD on PCI's claim that the burden-shifting approach adopted in the 2013 Rule was contrary to law. App.49-52. The court noted that HUD's framework "is largely consistent with the framework courts have developed on their own

for analyzing disparate impact claims" and concluded that HUD's burden-shifting approach was a "reasonable accommodation of the competing interests at stake." App.51.

The court held, however, that HUD had failed to sufficiently address comments in the 2013 rulemaking raising concerns about application of discriminatory-effects liability to the insurance industry and remanded the case to HUD for further explanation. App.39-49.

### 3. Supreme Court's Decision in *Inclusive Communities*

While the district court's remand remained pending before the agency, the Supreme Court issued a decision holding that the text of the FHA encompasses discriminatory-effects claims. *Inclusive Communities*, 576 U.S. at 532–35. The Court observed that such claims are "consistent with the FHA's central purpose" of "eradicat[ing] discriminatory practices within a sector of our Nation's economy." *Id*. at 539. As the Court emphasized, "[r]ecognition of disparate-impact liability under the FHA also plays a role in uncovering discriminatory intent: It permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment." *Id*. at 540. And "[i]n this way

disparate-impact liability may prevent segregated housing patterns that
might otherwise result from covert and illicit stereotyping." *Id*.

The Court also explained that "disparate-impact liability has always
been properly limited in key respects," *Inclusive Communities*, 576 U.S. at
540, and that the FHA "mandates the 'removal of artificial, arbitrary, and
unnecessary barriers,' not the displacement of valid governmental
policies." *Id*. (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).
The Court highlighted the importance of the burden-shifting framework in
determining FHA discriminatory-effects liability, and cited HUD's 2013
Rule twice in support of its analysis. *Id*. at 541–42 (citing 78 Fed. Reg. at
11,470, 11,476).[3]

---

[3] The Supreme Court affirmed the Fifth Circuit's judgment, which had
directed the district court on remand to apply the 2013 Rule. *See Inclusive
Cmtys. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 282-
83 (5th Cir. 2014). The Second Circuit later held that the Supreme Court
implicitly adopted HUD's 2013 Rule. *See Mhany Mgmt., Inc. v. County of
Nassau*, 819 F.3d 581, 618-19 (2d Cir. 2016) (court also notes that 2013 Rule
had more restrictive burden-shifting framework than prior Second Circuit
precedent). Other courts have also applied a burden-shifting approach
consistent with the 2013 Rule following *Inclusive Communities*. *See, e.g.*,
*Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424, 428, 432 n.10
(4th Cir. 2018); *Avenue 6E Invs. LLC v. City of Yuma*, 818 F.3d 493, 512-13
(9th Cir. 2016); *but see Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920
F.3d 890, 902-04 (5th Cir. 2019) (reading *Inclusive Communities* to announce

**4. HUD's 2016 Supplement and District Court 2017 Order**

**a.** In 2016, following the Supreme Court's decision in *Inclusive Communities*, HUD provided the supplemental explanation regarding the 2013 Rule's application to insurance directed by the district court's remand order. *See* 81 Fed. Reg. 69,012 (Oct. 5, 2016). In the supplement, HUD reasoned that an exemption for homeowners insurance would be "unworkable and inconsistent with the broad fair housing objectives and obligations" in the FHA, and that those costs were not outweighed by any benefit the exemptions would provide the industry. *Id*. at 69,012-13. As relevant here, HUD also specifically addressed insurers' concerns based on the McCarran-Ferguson Act and fully explained its conclusion that those concerns do not warrant exemptions from the 2013 Rule but would be more appropriately addressed on a case-by-case basis. *Id*. at 69,013.

---

"more demanding test than that set forth in the HUD regulation," but acknowledging contrary authority in other circuits); *Southwest Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 961 & n.6 (9th Cir. 2021) (noting disagreement among courts over whether Supreme Court had adopted 2013 Rule framework in *Inclusive Communities*; in light of HUD's modifications in enjoined 2020 rule, 85 Fed. Reg. 60,288 (Sept. 24, 2020), applying *Inclusive Communities* rather than either 2013 Rule or 2020 Rule).

**b.**  After HUD issued the 2016 supplement, PCI filed a motion to amend its complaint and proposed including counts substantively identical to its original complaint in addition to new counts based on *Inclusive Communities* and HUD's supplement.  App.85-86.  The district court granted the motion in part and denied it in part.  App.71-75.  The court allowed PCI to include counts alleging that HUD's 2013 Rule was arbitrary and capricious because the supplement failed to adequately address the issues identified in the remand order and the impact of *Inclusive Communities*.  App.74-75.

The district court denied the motion as futile with respect to the counts alleging that application of the 2013 Rule to homeowners insurance violates the McCarran-Ferguson Act and that HUD's burden-shifting approach was contrary to law based on its previous decision in favor of HUD.  App.71-72.  The court also denied the motion as to PCI's proposed count alleging that the burden-shifting approach violated limitations on disparate-impact liability set forth in *Inclusive Communities* on the ground that Supreme Court affirmed the Fifth Circuit's decision adopting HUD's burden-shifting approach and "did not identify any aspect of HUD's burden-shifting approach that required correction."  App.72-74.

PCI amended its complaint in accordance with the district court's order and filed a motion for summary judgment in September 2017. Dkt.136.  The court subsequently stayed proceedings for several years due to HUD's ongoing rulemaking activities.  *See* App.86-88.

### 5.  **2020 and 2023 HUD Rules**

**a.**  In 2019, HUD issued a notice of proposed rulemaking (NPRM), *see* 84 Fed. Reg. 42,854 (Aug. 19, 2019), and, in 2020, published a final rule that made significant changes to the 2013 Rule.  *See* 85 Fed. Reg. 60,288 (Sept. 24, 2020) (2020 Rule).  Before the 2020 Rule took effect, however, a district court in the District of Massachusetts issued an order staying the effective date and preliminarily enjoining HUD from enforcing the 2020 Rule.  *See Massachusetts Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 496 F. Supp. 3d 600, 611–12 (D. Mass. 2020).  The 2020 Rule never went into effect and the 2013 Rule remained effective.

**b.**  On June 25, 2021, HUD published a new NPRM explaining that HUD had reconsidered the 2020 Rule and proposed to rescind the 2020 Rule and formally reinstate the agency's 2013 Rule. *See* 86 Fed. Reg. 33,590 (June 25, 2021).  On March 31, 2023, HUD promulgated a final rule rescinding the 2020 Rule and reinstating the 2013 Rule, including the three-

step burden-shifting framework. *See* 88 Fed. Reg. 19,450. The 2023 Rule took effect on May 1, 2023. *See id*.

HUD received over 10,000 comments on the proposed rule (88 Fed. Reg. at 19,454, App.179), including comments from PCI and other insurance industry representatives reiterating comments objecting to application of the 2013 Rule to insurance. *See* App.87-88; 88 Fed. Reg. at 19,463-80, App.188-205. HUD also received numerous comments supporting the application of the rule to the insurance industry. *See id*. The agency explained that after it "reviewed and carefully considered these comments," it decided to recodify the 2013 Rule, which "best aligns with Fair Housing Act jurisprudence and is most consistent with the Act's remedial purposes." 88 Fed. Reg. at 19,454, App.179.

HUD's 2023 Rule included 17 pages responding to comments involving insurance and six pages responding to comments on *Inclusive Communities*. *See* App.88 (citing 88 Fed. Reg. at 19,463-80; 19,457-62). HUD agreed with comments supporting reinstatement of the 2013 Rule as consistent with *Inclusive Communities*, noting that the Supreme Court had cited the 2013 Rule with approval, and that various lower courts had relied

on the 2013 Rule following *Inclusive Communities*. 88 Fed. Reg. at 19,458, App.183.

HUD also responded to comments seeking an exemption for homeowners insurance generally or "risk-based pricing and underwriting in particular" from discriminatory-effects liability. 88 Fed. Reg. at 19,463-80, App.188-205. At the outset, HUD stated that it "lacks the authority to create exemptions" in the FHA, and that Congress "established exemptions for certain practices but not for insurance" in the plain text of the Act. 88 Fed. Reg. at 19,463, App.188. HUD further made clear that although insurers were free to raise applicable defenses in individual cases, the agency declined to "provide a single industry or a set of specific practices a blanket exemption from liability from all claims regardless of whether those claims otherwise would satisfy the rule's (and the Act's) requirements." *Id.*

The agency emphasized that the 2023 Rule's burden-shifting "framework takes into account any defendant's legitimate interest in the challenged practice—including an insurance defendant," and "any conflict with a specific state insurance law can and should be addressed on a case-by-case basis in the context of that state law." 88 Fed. Reg. at 19,465,

App.190.  HUD observed that "[r]isk-based decision making is not unique to insurance, and discriminatory effects liability has proven workable in other contexts  involving complex risk-based decisions, such as mortgage lending, without the need for exemptions or safe harbors."  *Id*. at 19,467, App.192.  In addition, HUD concluded that "[t]he fact that state laws mandate that rates be actuarially sound, or risk-based, does not necessarily negate causation because insurers may not in fact be using risk factors that are actuarially sound or the least discriminatory set of risk factors that would achieve that end."  *Id*. at 19,472, App.197.

HUD also rejected commenters' reliance on the McCarran-Ferguson Act as a basis for an exemption from discriminatory-effect liability for insurers' risk-based pricing and underwriting.  88 Fed. Reg. at 19,474-76, App.199-201.  HUD found that some discriminatory-effects claims would be precluded under McCarran-Ferguson and others would not, "depending on a host of case-specific variables, so wholesale exemptions would be overbroad."  *Id*. at 19,474, App.199.  These variables include differences among state insurance laws "as well as the ways in which a single state's insurance laws can change over time."  *Id*. at 19,475, App.200.  As HUD explained, that a statute such as the FHA "is not specifically

exempted from application of the McCarran-Ferguson Act simply means that the McCarran-Ferguson *analysis* may be applied on a case-by-case basis to claims brought under that nonexempt statute; it does not mean that McCarran-Ferguson categorically bars all such claims." *Id* at 19,476, App.201.

HUD also reaffirmed and incorporated its 2016 supplement on remand from the district court. *See* 88 Fed. Reg. at 19,451-52, 19,463 n.113, 19,464, App. 176-77, 188 n.113, 189. The agency noted that even if it "had authority to exempt insurance categorically," it "finds that such an exemption for a single industry would neither be workable nor consistent with the purpose of the Act." *Id*. at 19,464, App.189. HUD made this determination "for the reasons it stated in its 2016 Supplemental Notice" as well as for "additional reasons" noted in the 2023 Rule. *Id*. As HUD explained, "even if the commenters were correct that the [insurance] industry's practices generally will not give rise to discriminatory effects liability, that fact does not provide a sufficient justification for exempting the entire industry from liability in all circumstances, even where there is a practice with an unjustified discriminatory effect." *Id*.

**c.** In May 2023, PCI filed a Second Amended Complaint in the present case, which added substantively identical claims challenging the 2023 Rule. *See* App. 436-46. The complaint included claims that the district court had previously dismissed in its 2014 order, which were included solely for the purposes of preservation for appeal. App.88 n.9.

### 6. District Court 2024 Decision

After PCI filed its Second Amended Complaint, the parties filed cross-motions for summary judgment. App.88. On March 26, 2024, the district court issued a decision upholding the 2023 Rule as applied to homeowners insurance. App.95-124. The court held that PCI had standing and that its remaining claims were ripe for review, but rejected PCI's arguments on the merits. App. 89-124.

The district court first concluded that HUD had provided a reasonable explanation for its decision that case-by-case adjudications— rather than a blanket exemption for risk-based practices—were appropriate for determining whether the McCarran-Ferguson Act precludes discriminatory-effects liability under the FHA. App.96-108. The court noted that HUD "engaged with a broad array of stakeholders in reaching this decision and considered their competing arguments," and the agency's

"justification for allowing this question to be worked out one state at a time was well-supported by the principles of federalism for which McCarran-Ferguson stands."  App.107-08.

The court further determined that through the 2023 Rule and incorporated 2016 supplement, "HUD has supplied what was missing before: a thorough and well-reasoned explanation for its decision to allow disparate-impact claims against risk-based insurance practices under the FHA."  App.77.  The court held that PCI had "not shown that it was unreasonable for HUD to refuse to carve out an exemption for 'actuarial or risk-based calculations'" by insurers, (App.116), and that HUD had "supplied a 'logical rationale' for declining to provide insurers with a categorical exemption under the Rule."  App.119.  The court also rejected PCI's contention that HUD's denial of a categorical exemption to homeowners insurers from application of the Rule was arbitrary and capricious in light of *Inclusive Communities*.  App.120-24.  As the court concluded, "[t]his time around, HUD considered the concerns that the court posed, engaged with relevant stakeholders, marshaled others' expertise as well as its own, and documented its reasoning in detail."  App.125.  The court thus granted summary judgment in favor of HUD.  *Id.*

## SUMMARY OF ARGUMENT

The district court properly upheld HUD's 2023 Rule as applied to homeowners insurers' pricing and underwriting practices. In this pre-enforcement facial challenge, PCI has failed to show that its McCarran-Ferguson claim is ripe, or that HUD's decision not to exempt homeowners insurance from the 2023 Rule was arbitrary and capricious. HUD's readoption of its burden-shifting approach to discriminatory-effects liability under the FHA in the 2023 Rule was also fully consistent with *Inclusive Communities*, 576 U.S. 519 (2015).

**1. a.** The district court properly dismissed as unripe PCI's claim that application of the 2023 Rule to homeowners insurers' pricing and underwriting practices violates the McCarran-Ferguson Act. As the district court recognized, the preemptive effect of McCarran-Ferguson must be considered on a case-by-case basis to determine whether application of FHA discriminatory-effects liability to a particular insurance practice would "invalidate, impair, or supersede" application of a particular state insurance law. 15 U.S.C. § 1012(b).

As the Supreme Court has held, in enacting the McCarran-Ferguson Act, Congress did not intend to preempt the field of insurance for the

states. *Humana Inc. v. Forsyth*, 525 U.S. 299, 308-09 (1999). In order to adjudicate whether the McCarran-Ferguson Act preempts an FHA disparate-effects claim, specific facts and context thus matter, with respect to both the particular challenged insurance practice and the particular state laws at issue. As the district court properly concluded, PCI's McCarran-Ferguson Act claim therefore is not fit for judicial review.

PCI also has failed to show that denying review will impose hardship on its members. If an FHA complaint were filed against any PCI member, it could assert McCarran-Ferguson preemption as a defense to the action. The 2023 Rule does not purport to alter application of the McCarran-Ferguson Act, and HUD has acknowledged that McCarran-Ferguson would likely preclude some discriminatory-effects claims. Moreover, the 2023 Rule does not prohibit risk-based decisions, and HUD specifically acknowledged the importance of risk allocation in the insurance industry.

**b.** For similar reasons, even if this Court holds that PCI's claim is ripe, it should affirm the district court's judgment on the merits. As the Supreme Court emphasized, "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative

regime, the McCarran–Ferguson Act does not preclude its application."
*Humana*, 525 U.S. at 310.  HUD thus properly concluded that some
discriminatory-effects claims would be precluded under the McCarran-
Ferguson Act and others would not, "depending on a host of case-specific
variables."  88 Fed. Reg. at 19,474, App.199.

 **2.**  The district court correctly held that HUD's refusal to exempt
homeowners insurers' pricing and underwriting practices from
discriminatory-effects liability under the FHA was not arbitrary and
capricious.  HUD thoroughly explained its decision and fully considered
and addressed numerous comments from the insurance industry,
including comments contending that an exemption was warranted based
on the McCarran-Ferguson Act.  In declining to create an exemption, HUD
analyzed relevant case law, including precedent of this Court and the
Supreme Court, which formed the basis of its determination that
McCarran-Ferguson preemption should be decided on a case-by-case basis.
Moreover, that the FHA expressly exempts other practices from
discriminatory-effects liability, including consideration of factors other
than protected characteristics by real estate appraisers, supports HUD's

decision.  If Congress had intended to create additional exceptions, it could have done so.

**3.**  Contrary to PCI's contentions, application of HUD's 2023 Rule to homeowners insurers' pricing and underwriting practices would not violate pre-existing limits on discriminatory-effects liability as set forth by the Supreme Court in *Inclusive Communities*.  The Court's holding in *Inclusive Communities* confirmed HUD's longstanding interpretation that the FHA authorizes discriminatory-effects claims and emphasized the importance of such claims to achieving the Act's purpose of eradicating housing discrimination.  576 U.S. at 530-40.  The remainder of the Court's opinion does not conflict with the burden-shifting framework adopted in HUD's 2013 Rule and reaffirmed in the 2023 Rule.  *See id*. at 540-47.  Rather, the Court made clear that "disparate-impact liability *has always* been properly limited in key respects," thereby indicating that the Court was not creating new or more stringent limitations on liability.  *Id*. at 540 (emphasis added).

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's dismissal of a claim for lack of subject matter jurisdiction.  *Commonwealth Plaza Condo. Ass'n v. City*

*of Chicago*, 693 F.3d 743, 745 (7th Cir. 2012).   The Court also reviews *de novo*

district court orders granting summary judgment.   *Seekins v. CHEP USA*, 20

F.4th 345, 348 (7th Cir. 2021).

## ARGUMENT

## I.  The District Court Properly Dismissed PCI's McCarran-Ferguson Claim.

### A. The District Court Correctly Dismissed PCI's McCarran-Ferguson Claim As Unripe.

**1.a.**   In determining whether a claim is ripe, courts consider two

factors: (1) "the fitness of the issues for judicial decision," and (2) "the

hardship to the parties of withholding court consideration." *Abbott Labs. v.*

*Gardner*, 387 U.S. 136, 148-49 (1967).   Here, both factors weigh strongly in

favor of withholding review of PCI's McCarran-Ferguson claim.

A pre-enforcement challenge to an agency regulation is not fit for

review where, as here, "further factual development would significantly

advance [the court's] ability to deal with the legal issues presented."

*National Park Hosp. Ass'n v. Department of the Interior*, 538 U.S. 803, 812

(2003) (quotation marks omitted).   As the Supreme Court has recognized,

in the McCarran-Ferguson Act, Congress did not intend to preempt the

field of insurance for the states;  rather, whether a federal law would

"invalidate, impair, or supersede," 15 U.S.C. § 1012(b), state insurance law depends on the facts and laws at issue in particular cases. *Humana Inc. v. Forsyth*, 525 U.S. 299, 308-09 (1999). The McCarran-Ferguson Act thus will not preclude a claim "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime." *Id*. at 310. Accordingly, whether McCarran-Ferguson precludes a particular FHA claim depends on a myriad of case-specific factors, including the insurance practice challenged and the specifics of relevant state laws. *See id*.

In *Humana*, to determine whether McCarran-Ferguson preempted application of the federal Racketeer Influenced and Corrupt Organizations Act (RICO) to policy beneficiaries' claims of insurance fraud, the Supreme Court examined the "facts of this case," including relevant provisions of Nevada state law. 525 U.S. at 311-14. Because the Court found that application of RICO would complement Nevada state law and would not frustrate "any articulated Nevada policy," it held the McCarran–Ferguson Act did not preclude plaintiffs' RICO claims. *Id*.

As this Court has recognized, facts and context thus matter in analyzing whether the McCarran-Ferguson Act preempts a particular application of the FHA. In *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287, 295 (7th Cir. 1992), this Court explained that whether McCarran-Ferguson bars a claim depends on whether allowing plaintiff's FHA claim to proceed would "'invalidate, impair, or supersede'" the particular state's insurance law. *Id.* at 293 (quoting 15 U.S.C. § 1012(b)). The Court concluded that McCarran-Ferguson did not preclude plaintiff's FHA redlining claim because Wisconsin state law neither condoned nor required redlining; it made no difference that Wisconsin did not recognize a private right of action or imposed different remedies. *Id.* at 295-97.

Other courts of appeals have also recognized that McCarran-Ferguson preemption entails a case-by-case approach. *See, e.g., Ojo v. Farmers Grp. Inc.*, 600 F.3d 1205, 1208-10 (9th Cir. 2010) (en banc) (per curiam) (FHA applies to homeowners insurance; certifies question to Supreme Court of Texas to determine whether Texas law complements or conflicts with application of FHA to plaintiff's challenge to insurer's credit-scoring system); *Saunders v. Farmers Ins. Exch. (Saunders I)*, 440 F.3d 940, 945 (8th Cir. 2006) (declining to address argument that McCarran-Ferguson

preempted disparate-impact challenge under FHA where record insufficiently developed); *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 297-98 (5th Cir. 2003) (McCarran-Ferguson does not bar FHA challenge to practice of using credit scoring in pricing insurance).  As these cases demonstrate, PCI's McCarran-Ferguson preemption inquiry cannot be performed without further factual development.

Moreover, this Court has indicated that where a party challenges an agency action as subject to preemption, the fitness of that issue for review typically turns on the *type* of preemption at stake.  *See Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759-60 (7th Cir. 2008).  In *Wisconsin Central*, this Court *sua sponte* dismissed claims that a state agency action was preempted by the Railway Labor Act (RLA).  *Id.* at 759-60.  In doing so, the Court distinguished between claims of field preemption – an issue that is generally not context-dependent and thus can often be resolved in a pre-enforcement context – and a claim of preemption under the RLA, which requires a "'case-by-case factual analysis.'"  *Id.*at 760.  This latter category of claims is not ripe for review in a pre-enforcement context.  *Id.*  As illustrated above, the McCarran-Ferguson Act does not preempt the field of insurance, but like RLA preemption, requires case-by-case analysis.

In short, when considering whether McCarran-Ferguson precludes application of the FHA, courts must analyze the insurance practice being challenged, the relief sought, and the state laws at issue. *See Saunders I*, 440 F.3d at 946.  Because "judicial appraisal of these factors" would undoubtedly "stand on a much surer footing in the context of a specific application" of the 2023 Rule to a specific insurance practice in a particular state than it would "in the framework of the generalized challenge made here," PCI's claim is unfit for review. *See Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967).

**b.**  PCI's contention (Br.36-40) that its claim is fit for judicial decision because it raises a predominantly legal issue ignores applicable precedent regarding the nature of McCarran-Ferguson preemption.  As discussed above, under the Supreme Court's decision in *Humana*, McCarran-Ferguson does not preempt application of federal law unless it would conflict or interfere with state insurance law or declared policy.  Accordingly, the district court recognized that "[c]ourts that have considered McCarran-Ferguson challenges to housing discrimination claims since *Humana* have looked to the particular, allegedly discriminatory practices at issue and the particular insurance regulations

and administrative regime of the state in which those practices occurred." App.26 (citing cases).

PCI's claim rests on its repeated assertion that state insurance law "uniformly requires or permits risk-based pricing and underwriting practices." *See* Pl. Br.36, 1, 11, 33. But such state laws neither create an across-the-board conflict with HUD's Rule nor provide a basis for McCarran-Ferguson preemption. To the contrary, HUD emphasized in the 2023 Rule that risk-based decisions are not prohibited and specifically acknowledged the importance of risk allocation in the insurance industry. *See* 88 Fed. Reg. at 19,467-70, App.192-95.

Moreover, that some states require risk-based pricing, and others only allow it (Pl. Br.1, 11, 33, 36) supports the district court's reliance on the variation in state laws as one of the factors that renders PCI's McCarran-Ferguson claim unripe. The amicus brief filed by the State of Illinois in support of HUD on behalf of itself and 13 other states and the District of Columbia in district court further illustrates the flaw in PCI's position. *See* Dkt.309. The brief cites differences among state laws with respect to whether insurance rates must be approved by state insurance commissioners before use and whether and to what extent actuarial

judgments and underwriting decisions are subject to review (*id*. at 10), thus highlighting why the McCarran-Ferguson preemption inquiry is not fit for judicial review in the absence of specific challenged insurance practices and specific state laws.

In addition, the state amici's brief highlights that numerous states, including Illinois, assert that FHA discriminatory-effects liability complements their state insurance regulatory schemes and advances their policy goals.  Dkt.309 at 1, 6-7, 11-13; *see NAACP*, 978 F.2d at 295-96 (defendant "needs to show that [FHA] conflicts with state law"; duplication or overlap not sufficient for McCarran-Ferguson preemption). That Idaho and 13 other states filed a brief in support of PCI on appeal asserting that the McCarran-Ferguson Act should preempt homeowners insurers' pricing and underwriting practices helps demonstrate the differences among state laws and thus *supports* the district court's holding that PCI's McCarran-Ferguson preemption claim is not ripe.  *See* Br. of Amici Idaho, et al. at 3-15.  Such differences show why the particular insurance practice challenged and the particular state insurance laws at issue necessarily inform the preemption inquiry.

**2.** PCI also fails to demonstrate hardship from withholding review. As the district court correctly held, "[a]s a general rule, the additional burden to a litigant of case-by-case adjudication is not a sufficient hardship to justify judicial review of an otherwise unripe claim." App.31 (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734-35 (1998)). Here, if HUD or a private party files a complaint against a PCI member, it could then assert a McCarran-Ferguson preemption defense, which at that time would be fit for review. App.31, 32 n.8.

Significantly, the 2023 Rule does not purport to determine whether any particular housing practice in any particular situation would give rise to liability under the FHA. Instead, it merely sets out a framework for considering disparate-impact claims. Nor does that framework increase insurers' exposure to discriminatory-effects liability; rather, prior to the 2013 Rule, 11 circuits had held that discriminatory-effects claims were cognizable under the FHA and had adopted the same or a similar burden-shifting approach to such claims. *See supra* pp. 7-8 & n.2. Moreover, the Rule does not purport to alter the operation of McCarran-Ferguson. *See* 88 Fed. Reg. at 19,474, App.199. Thus, the Rule does not foreclose insurers from asserting McCarran-Ferguson defenses on a case-by-case basis. PCI's

preemption claim here would require the Court to hypothesize about the as-yet-unknown contours of any future actions brought to enforce the FHA pursuant to the Rule.

To support its claims of hardship, PCI cites (Br.41) declarations of insurance executives in 2014 that speculate about data collection and use that was not required by either the HUD 2013 Rule in effect at the time or by the 2023 Rule.  PCI does not cite any provision of either Rule that requires its members to collect or use data regarding protected characteristics of insureds and applicants.  *See* App.95, 124; *National Ass'n of Mutual Ins. Cos. v. HUD* (*NAMIC*), 693 F. Supp. 3d 20, 36 (D.D.C. 2023), *appeal docketed*, No. 23-5275 (D.C. Cir. Nov. 17, 2023) ("Nowhere does the Disparate-Impact Rule require those engaging in housing practices to collect or use data on individuals' protected characteristics.").[4]

Accordingly, as the district court correctly found, "the only hardship that PCI's members might suffer" from the court withholding review "is

_____

[4] In a separate pre-enforcement facial challenge to HUD's 2023 Rule filed by another insurance association, the district court upheld the 2023 Rule, rejecting the argument that it went beyond limitations on discriminatory-effect liability recognized by the Supreme Court in *Inclusive Communities*. *See NAMIC*, 693 F. Supp.3d at 36-41.

the burden of having to challenge disparate impact claims under the McCarran-Ferguson Act on a case-by-case basis rather than in one fell swoop."  App.31.  This "kind of litigation cost saving," however, is insufficient to "justify review in a case that would otherwise be unripe." *Ohio Forestry Ass'n*, 523  U.S. at 735.

### B.  HUD's Discriminatory-Effects Rule Does Not Violate The McCarran-Ferguson Act.

Even assuming *arguendo* that PCI's McCarran-Ferguson claim were ripe, PCI's facial challenge to the 2023 Rule as precluded by McCarran-Ferguson would fail on the merits for many of the same reasons that render it unripe.  PCI has argued on appeal (Br.26-34) that it is entitled to judgment on the merits of its McCarran-Ferguson claim, and the parties fully briefed the issue below.

### 1.  The District Court Properly Determined That PCI's McCarran-Ferguson Claim Is A Facial Challenge.

As the district court correctly concluded, PCI's McCarran-Ferguson Act claim is a facial challenge because PCI seeks to invalidate the Rule without reference to a particular dispute between an insurer and HUD or a private party.  *See* App.21-22.  Contrary to PCI's contention (Br.37), it makes no difference that its pre-enforcement challenge focuses on the 2023

Rule's application to homeowners insurance.  As the district court explained, "PCI does not challenge a particular, concrete application of the Rule to any of its members"; instead, PCI "categorically challenges a broad range of potential applications of the Rule without relying on the facts of any particular application."  App.21.

That PCI does not challenge HUD's Rule outside the insurance context thus should not affect whether its claim will be reviewed under standards applicable to facial challenges, "especially considering that the McCarran-Ferguson Act itself only applies to the business of insurance." App.22.  Indeed, the Supreme Court has held that a claim seeking wholesale invalidation of a law with respect to a broad class of conduct must meet the standard for facial challenges, even if the claim does not seek to invalidate the law as to all covered conduct.  *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (rejecting argument that action was not facial challenge because it did not seek to strike down law "in all its applications, but only to the extent it covers referendum petitions").  Citing *Reed*, this Court explained that "the Supreme Court has instructed that, in determining whether a challenge is facial or as-applied, "[t]he label is not what matters"; rather, a challenge is facial to the extent that "plaintiffs'

claim and the relief that would follow . . . reach beyond the particular

circumstances of these plaintiffs." *Center for Individual Freedom v. Madigan*,

697 F.3d 464, 475 (7th Cir. 2012) (quoting *Reed*, 561 U.S. at 194).

Consistent with these principles, another district court recently

rejected a pre-enforcement challenge by an insurance association to HUD's

2023 Rule as applied to homeowners insurers' underwriting and rating

decisions. *See NAMIC*, 693 F. Supp.3d at 36-41. In doing so, the court

"ask[ed] whether the Rule is invalid in *all* such underwriting and rating

decisions, not a particular decision that someone alleges resulted in a

disparate impact." *See id*. at 36 n.9. Similarly, to prevail on its facial

challenge here, PCI must show that the Rule is invalid with respect to *all*

homeowners insurers' pricing and underwriting practices.

PCI further contends (Br.37-38) that even if this Court holds that its

claim is a facial challenge, the district court erred by applying the "no set of

circumstances" standard initially set forth in *United States v. Salerno*, 481

U.S. 739, 745 (1987), under which a statute or regulation will be upheld

absent a holding that "no set of circumstances exists under which the Act

would be valid." *Id*. PCI cites (Br.37-38) *Moody v. NetChoice, LLC*, 144 S. Ct.

2383 (2024), in which the Supreme Court noted in the context of a First

Amendment challenge that, outside of that context, a facial challenge to a statute could succeed only if the plaintiff satisfies the *Salerno* "no set of circumstances" standard or "shows that the law lacks a plainly legitimate sweep." *Id.* at 2397 (quotation marks omitted). PCI also relies (Br.38) on *A Woman's Choice-East Side Women's Clinic v. Newman*, 305 F.3d 684 (7th Cir. 2002), where this Court noted a conflict in Supreme Court case law on whether "a law may be held unconstitutional only when 'no set of circumstances exists under which the Act would be valid'"). *Id.* at 687 (quoting *Salerno*, 481 U.S. at 745).

PCI's reliance on *Moody* and *A Woman's Choice* is misplaced. In a more recent pronouncement on facial challenges, this Court cited *Moody* and referred to the *Salerno* test as "the standard for facial challenges that do not rest on the First Amendment." *Stowe v. Rybroek*, 114 F.4th 630, 634 (7th Cir. 2024). In addition, as the district court noted (App.23) the Supreme Court, this Court and other courts have applied the *Salerno* "no set of circumstances" test to facial challenges to federal agency actions. *See Reno v. Flores*, 507 U.S. 292, 301 (1993) (federal regulation); *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 619 (7th Cir. 2003); *Association of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 442 (D.C.

Cir. 2012).  Moreover, because PCI asserts a facial preemption challenge in a context where state law does not occupy the field, its "case must stand or fall on the question whether *any possible*" application of the Rule's burden-shifting approach "would be pre-empted."  *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 588 (1987).

The district court thus properly concluded (App.23) that PCI's McCarran-Ferguson claim is a facial challenge to HUD's Rule, and PCI must show that there is no set of circumstances in which application of the 2023 Rule to risk-based insurance pricing or underwriting would be valid. In any event, both the "no set of circumstances" and "lacks a plainly legitimate sweep" tests are "rigorous standard[s]" that set a "very high bar" for plaintiffs, as the Supreme Court has "made facial challenges hard to win."  *Moody*, 144 S. Ct. at 2397 (quotation marks omitted).  As set forth below, regardless of whether PCI would need to show that as applied to homeowners insurance, there are "no set of circumstances" in which the HUD Rule would be valid or that the HUD Rule "lacks a plainly legitimate sweep," PCI's McCarran-Ferguson Act claim fails on the merits.

## 2. PCI's Claim Fails On The Merits.

**a.** As demonstrated, PCI's theory of McCarran-Ferguson Act preclusion is incompatible with the Supreme Court's decision in *Humana*, which makes clear that Congress did not preempt the field of insurance for the states. Here, PCI cannot show that all applications of the 2023 Rule to homeowners insurer's pricing and underwriting practices "directly conflict with state regulation," "frustrate any declared state policy," or "interfere with a State's administrative regime." *See Humana*, 525 U.S. at 308-10.

In *Humana*, the Court held that the appropriate inquiry was not whether McCarran-Ferguson shielded the insurance industry from liability under RICO generally, but whether "RICO's *application to the . . . claims at issue* would 'invalidate, impair, or supersede' Nevada's laws regulating insurance" – a question that turned on "the facts of [the] case." 525 U.S. at 307, 311 (emphasis added) (quoting 15 U.S.C. § 1012(b)). In answering that question in the negative, the Court rejected the argument that preemption could be triggered by the mere fact of contemporaneous state regulation or the existence of a comprehensive state regulatory scheme. *Id.* at 309-10; *see Viens v. America Empire Surplus Lines Ins. Co.*, 113 F. Supp. 3d 555 (D. Conn. 2015) (claims under both federal and state law). Thus, as HUD noted in the

2023 Rule, "the inquiry required by *Humana* depends on the relevant state law and other case specific variables." 88 Fed. Reg. at 19,474, App.199.

PCI's facial challenge, which seeks to shield homeowners insurers from FHA discriminatory-effects claims for their pricing and underwriting practices nationwide without reference to the particular pricing or underwriting policy at issue or to applicable state law, thus is fundamentally at odds with the framework outlined in *Humana*.  PCI's theory of preemption entirely fails to account for significant differences among pricing and underwriting practices and among state insurance regulatory schemes.  *See* PCI Br. 31-34; *see also* Br. of Amicus Nat'l Council of Ins. Legislators 28-29.  PCI's position also ignores that state amici supporting HUD asserted that "the Rule complements the law and policy of our respective States in a way that presents no inherent interference with our existing administrative schemes."  Dkt.309 at 17; *see id.* at 11 (noting that Illinois state law, for example, "imposes disparate impact liability on insurance companies").  Thus, as the district court observed, "it is HUD's case-by-case approach, not PCI's requested blanket exemption, that presumes less about what state regulators want and need."  App.104-05.

Indeed, as the state amici's brief supporting HUD illustrates, a holding that McCarran-Ferguson preempts all homeowners insurers' risk-based pricing and underwriting decisions would "unnecessarily depriv[e] states like Illinois of a federal remedy that is, as applied, actually complementary to their own regulatory schemes."  Dkt.309 at 11.  Citing the amicus brief, the district court also recognized that some states "would welcome the added layer of federal protection in advancing their fair-housing objectives."  App.105 (citing Dkt.309 at 13-14).  As the court explained, "[t]hese states also allow or permit risk-based decision-making under their insurance laws, but are willing to coordinate these laws with federal-court enforcement of the FHA and accept the policy results."  *Id*. PCI's facial challenge, if successful, would deprive these states of the benefits of complementary federal enforcement, contrary to *Humana*.

Consistent with *Humana*, this Court and other courts of appeals thus have recognized the need to engage in a case-by-case approach—including an examination of the challenged insurance practice and relevant state laws—to determine whether McCarran-Ferguson preemption applies.  *See NAACP*, 978 F.2d at 295-97; *Ojo*, 600 F.3d at 1208-10; *Saunders I*, 440 F.3d at 945; *Dehoyos*, 345 F.3d at 297-98.  As noted, in *NAACP*, this Court held that

mere duplication or overlap between the FHA and state insurance law is insufficient to warrant McCarran-Ferguson preemption. 978 F.2d at 295-97. Moreover, "allowing the states to exercise exclusive or autonomous discretion in insurance regulation is not a valid rationale for finding [McCarran-Ferguson] preemption." *Dehoyos*, 345 F.3d at 297 n.5.

**b.** PCI advances several arguments in support of its facial challenge, none of which has merit. At the outset, PCI contends that HUD's 2023 Rule unlawfully "intrude[s] into a realm that Congress expressly preserved for the States." PCI Br.27. As demonstrated, however, the Supreme Court has already held in *Humana* that where, as here, federal laws would otherwise apply to insurers, they are not reverse-preempted under the McCarran-Ferguson Act unless application of the federal law to the plaintiff's claim would "'invalidate, impair, or supersede'" state laws regulating insurance. *See* 525 U.S. at 314.

PCI also relies on *West Virginia v. EPA*, 597 U.S. 697 (2022), to argue that HUD has "acted without clear statutory authority," and "intruded into state regulation of insurance ratemaking and underwriting." PCI Br.27. This argument is equally unavailing. As HUD noted in the 2023 Rule, "Congress authorized HUD to interpret and enforce the [FHA]," and

"provided no exemption for insurance practices." 88 Fed. Reg. at 19,466 &
n.148 (citing 42 U.S.C. §§ 3610, 3612, 3614a (HUD has the authority to make
rules to carry out the Act)). Thus, as the district court correctly recognized,
*West Virginia* is inapplicable to this case. App.106.

Congress provided HUD with express rulemaking authority, and in
the 2023 Rule, HUD did not make "decisions of vast economic and political
significance" based on "novel reading[s]" of the FHA. App.106 (quotation
marks omitted). To the contrary, [c]ourts and lawmakers have been aware
of the close relationship between homeowners insurance and fair housing
objectives for decades," and "HUD has consistently asserted its authority
to regulate this important determinant of housing opportunity for over
forty years, and Congress has never second-guessed this assertion."
App.107. Moreover, the 2023 Rule does not purport to determine whether
any particular housing or insurance practice in any particular situation is
unlawful; rather, it merely provides a framework for addressing
discriminatory-effects claims.

**c.** PCI primarily relies (Br.28-29) on this Court's decision in *Doe v.
Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999) to support its

McCarran-Ferguson claim.  *Mutual of Omaha* does not advance PCI's position.

In *Mutual of Omaha*, this Court addressed whether a specific application of federal law to a specific insurance practice – namely a lawsuit under the Americans with Disabilities Act ("ADA") challenging an insurance company's cap on benefits for AIDS-related illnesses – impaired Illinois insurance law.  Though the opinion discussed state regulation of insurance in broad terms, the Court did not purport to adopt any sort of facial (or field) preemption principle.  Rather, the Court's primary holding was that the ADA did not prohibit the challenged insurance practice; in the alternative, the Court concluded that even if it did, the plaintiffs' "suit must fail anyway, because it is barred by the McCarran-Ferguson Act." *Mutual of Omaha*, 179 F.3d at 563.  Implicit in the Court's decision was the recognition that a challenge to insurance practices under the ADA in a different context would not raise the same preemption issue. *See id.* ("There is . . . a difference between refusing to sell a health insurance policy at all to a person with AIDS, or charging him a higher price for such a policy, . . . and . . . offering insurance policies that contain caps for various diseases some of which may also be disabilities[.]").

PCI's reading of *Mutual of Omaha* thus is overbroad. In *Mutual of Omaha*, this Court addressed a concrete dispute between plaintiffs and an insurer with respect to a specific insurance practice. 179 F.3d at 558; *see Dehoyos*, 345 F.3d at 298 n.6 (in *Mutual of Omaha*, "there was an actual *state insurance law* which purportedly conflicted with the application of the ADA to the particular insurance question at issue"). Here, in contrast, PCI is in essence seeking field preemption, which conflicts with prior circuit precedent in *NAACP* and the Supreme Court's decision in *Humana*.

In *NAACP*, this Court held in the context of an FHA claim that "a federal statute duplicating the terms of state law does not 'invalidate[s], impair[s], or supersede[s]' state law," and that "McCarran-Ferguson did not preempt an FHA disparate treatment challenge to "how, and at what price, [an insurer] writes . . . policies of insurance." 978 F.2d at 290, 293-97. *NAACP* demonstrates the overbreadth of PCI's position, as an FHA challenge to insurance rates under a theory of disparate *treatment* would also overlap with state laws authorizing insurance regulators to review (and potentially approve) rates. And yet this Court expressly held that McCarran-Ferguson did not bar such a claim. *See id*. In light of *Humana* and *NAACP*, for purposes of McCarran-Ferguson, the relevant question is

not whether a court will need to examine an insurer's purportedly risk-based practices, but whether doing so would conflict or interfere with state insurance laws or declared policies.  *See Humana*, 525 U.S. at 314.

PCI's reliance on the Eighth Circuit's decision in *Saunders v. Farmers Insurance Exchange* (*Saunders II)*, 537 F.3d 961 (8th Cir. 2008) is also misplaced.  Although PCI cites *Saunders* II, which held that McCarran-Ferguson preempted plaintiff's FHA discriminatory-effects claim, PCI ignores a prior appeal in the same case where the Eighth Circuit declined to address the McCarran-Ferguson question because the record was insufficiently developed.  *See Saunders I*, 440 F.3d at 945.  By the time the court decided that preemption issue in *Saunders II*, it could do so in the context of a specific insurance practice and a specific state regulatory scheme.  *See* 537 F.3d at 967-68.  As the Eighth Circuit recognized in *Saunders II*, the "fact-intensive" McCarran-Ferguson analysis requires courts to "focus . . . on the precise federal claims asserted" and the specific state laws at issue.  *Id*.

PCI also provides no support for its contention that "HUD's burden-shifting framework confirms that McCarran-Ferguson will invariably preempt the Rule's application to risk-based pricing and underwriting"

because the framework will "inevitably require examining the extent to which a challenged risk-based pricing or underwriting practice is actuarially sound and in compliance with state law." PCI Br.31. The Rule requires no such judgment in order to evaluate liability. *See* 24 C.F.R. § 100.500(b) (defining "legally sufficient justification" for purposes of FHA disparate impact liability without reference to state law). Where a federal court reviews an FHA discriminatory-effects claim, it applies and enforces federal law, not state law – even where the challenged practice also violates state law.[5] *See NAACP*, 978 F.2d at 295-96. And in "engaging in the unremarkable task of determining whether specific conduct falls within the ambit of federal civil rights law, a court would no more become a 'super actuary' than the court becomes a 'super entrepreneur' each time the court

---

[5] HUD acknowledged in the Rule that "[s]tate regulators may effectively and efficiently ensure that premiums are actuarially justified and not excessive, inadequate, or unfairly discriminatory as defined by state insurance codes," but also noted that "as commenters arguing for the exemption themselves recognize, 'unfairly discriminatory' as defined by insurance codes, is related to treating similar risks differently, which is wholly distinct from housing practices that are unlawful because they discriminate because of the protected characteristics under the [FHA]." 88 Fed. Reg. at 19,472, App.197.

must determine whether a discriminatory practice constitutes a business necessity." *Dehoyos*, 345 F.3d at 297 n.5.

In sum, the district court correctly dismissed PCI's McCarran-Ferguson claim as unripe because the requisite preemption inquiry cannot be performed in the absence of a concrete dispute. In the alternative, because of the variations in discriminatory-effects challenges and in applicable laws in different states, PCI also cannot show either that the HUD Rule is invalid in all applications to insurers' risk-based pricing and underwriting or that the Rule "lacks a plainly legitimate sweep."

## II. HUD's Denial Of An Exemption For Homeowners Insurers' Risk-Based Pricing And Underwriting Practices Was Reasonable And Not Arbitrary And Capricious.

In the 2023 rulemaking and the 2016 supplement, HUD thoroughly explained why it declined to exempt insurers' pricing and underwriting practices from discriminatory-effects liability and why that decision is consistent with the McCarran-Ferguson Act. The district court properly rejected PCI's challenge to HUD's explanation as arbitrary and capricious, concluding that "HUD's explanation as to McCarran-Ferguson is within the 'zone of reasonableness' necessary to pass muster." App.107 (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). The court

concluded that the "McCarran-Ferguson problem is undoubtedly tricky, but HUD on its second try has shown how enough future minds could differ on its resolution to justify a case-by-case approach," and, "[j]ust as importantly, HUD engaged with a broad array of stakeholders in reaching this decision and considered their competing arguments." *Id*. Because HUD "has reasonably considered the relevant issues and reasonably explained the decision," the district court's decision should be affirmed. *Prometheus Radio Project*, 592 U.S. at 423.

**A.** As an initial matter, HUD's refusal to create regulatory exemptions for specific insurance practices is consistent with the text, structure, and purpose of the FHA.  In the FHA, Congress expressly provided for statutory exemptions from discriminatory-effects liability for (1) consideration of factors other than protected characteristics by real-estate appraisers, 42 U.S.C. § 3605(c); (2) reasonable restrictions on maximum occupancy, *id*. § 3607(b)(1); and (3) practices excluding individuals with certain drug convictions from housing, *id*. § 3607(b)(4).  If Congress had intended to exempt homeowners insurers' pricing or underwriting activities, it could have said so.  *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 109 (1980).  Indeed, "'[w]here

Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-617 (1980)). Here, this principle applies with particular force in light of Congress's purpose in the FHA to "to eradicate discriminatory practices" in housing. *See Inclusive Communities*, 576 U.S. 519, 539 (2015).

In the 2013 and 2023 Rules, HUD thus merely declined to provide a regulatory exemption from discriminatory-effects liability that Congress had not provided in the FHA itself. *See* 78 Fed. Reg. at 11,475, App.167 ("creating exemptions beyond those found in the Act would run contrary to Congressional intent"); 88 Fed. Reg. at 19,463, App.188 (Congress "established exemptions for certain practices but not for insurance"). Accordingly, "in the absence of a specific exemption from liability" in the FHA for insurance pricing and underwriting, the court "must infer that Congress intended to permit disparate-impact liability" for such practices. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 431-32 (4th Cir. 2018).

Moreover, HUD expressly recognized in the 2023 Rule that creating an exemption for insurance practices would be contrary to the doctrinal approach to McCarran-Ferguson preemption adopted by the Supreme Court in *Humana*. As HUD concluded, under *Humana*, "McCarran-Ferguson preemption is assessed on an application-by-application basis and does not operate at the wholesale level" and thus, "the inquiry required by *Humana* depends on the relevant state law and other case-specific variables." 88 Fed. Reg. at 19,474, App.199. HUD's reliance on the statutory structure as well as binding Supreme Court precedent is more than sufficient to satisfy the "zone of reasonableness" APA standard.

**B.** PCI contends (Br.45-49) that HUD's citation of various cases allowing discriminatory-effects claims to proceed against insurers as support for refusing to exempt pricing and underwriting practices was misplaced. As the district court correctly concluded, however, HUD's analysis reflects that the "only way to even begin to assess" how often McCarran-Ferguson preemption would apply is by examining relevant case law, and in the Rule, "HUD has presented a panoply of court decisions across multiple circuits, all of which found that a disparate

impact claim could proceed against insurers without necessarily running afoul of McCarran-Ferguson."  App.98.

PCI attempts to distinguish the Fifth Circuit's decision in *Dehoyos*, 345 F.3d 290, on the ground that it "turned on a pleading failure," by the defendant insurer.  PCI Br.45.  Contrary to PCI's suggestion, the Fifth Circuit properly applied *Humana* by examining whether defendants had identified any direct conflict or interference with state law or declared state policy stemming from application of the FHA.  *Dehoyos*, 345 F.3d at 297 & n.5.  This was not a mere "pleading failure" by defendants; rather, it was a failure to satisfy the *Humana* preemption test.  As the Fifth Circuit recognized, defendants' allegations of potential interference with state regulation of insurance pricing were insufficient to warrant McCarran-Ferguson preemption.  *Id.* at 298.

PCI's criticism (Br.46) of HUD's citation to *Viens*, 113 F. Supp. 3d 555; *Jones v. Travelers Casualty Insurance Co. of America*, No. C-13-02390, 2015 WL 5091908 (N.D. Cal May 7, 2015); and *National Fair Housing Alliance v. Travelers Indemnity Co.*, 261 F. Supp. 3d 20 (D.D.C. 2017) also misses the point.  As the district court concluded, these cases show that various courts have "all rejected McCarran-Ferguson defenses against insurers for making

adverse pricing and underwriting decisions against landlords who rented to tenants receiving Section 8 housing assistance, even though these practices were arguably also based on objective risk and cost factors," thus countering insurance companies' assertions that McCarran-Ferguson will uniformly preclude FHA discriminatory-effects claims. App.99.

The district court also properly rejected PCI's invitation—renewed on appeal (Br.46-47)—to discount the conclusion of a federal district court in Tennessee in *Lumpkin v. Farmers Group*, No. 05-2868 Ma/V, 2007 WL 6996777 (W.D. Tenn. July 6, 2007) on the ground that it misinterpreted Tennessee state law. App.99 n.12. As the district court explained, the *Lumpkin* court "specifically considered, and rejected, the underlying presumption that PCI makes in this case—that if a state has enacted an insurance provision requiring insurers to consider actuarial risk factors, insurers have an unquestioned defense to a disparate impact claim." *Id*.

**C.** Contrary to PCI's contentions (Br.47-49), HUD sufficiently addressed this Court's decision in *Mutual of Omaha* in the 2023 rulemaking. *See* 88 Fed. Reg. at 19,474-76, App.199-201. HUD explained that *Mutual of Omaha* "did not foreclose *all* discriminatory-effects claims against insurers" as barred by McCarran-Ferguson, because in that case "'there was an actual

state insurance law which purportedly conflicted with the application of the ADA to the particular insurance question at issue.'" *Id*. at 19,474, App.199 (quoting *Dehoyos*, 345 F.3d at 298 n.6). By contrast, "where no state law is impaired, McCarran-Ferguson will not require preemption of a discriminatory effects claim against an insurer." *Id*.

HUD also directly refuted PCI's contention that *Mutual of Omaha* requires an exemption for "risk-based pricing and underwriting" because a challenge to such practices under the Rule would impermissibly require courts to assess such practices' actuarial soundness. *See* Pl. Br.48-49. As HUD explained, an examination of relevant case law, including *Mutual of Omaha*, reveals that "whether in fact a particular policy or practice would create a conflict so as to preempt the [FHA] is highly fact specific and depends on the particular state law and fair housing allegations in question." 88 Fed. Reg. at 19,474, App.199. In addition, HUD gave several examples of discriminatory-effects claims challenging insurance practices that would not necessarily require courts to evaluate whether a practice was actuarially sound or consistent with state law. *Id*. at 19,476, App.201. In the course of a discriminatory-effects challenge to a purportedly risk-based practice, for example, a plaintiff may show that the practice is in fact

based on business judgment.  *Id*.  That showing would not require a court to assess the actuarial soundness of the practice and thus would not conflict with *Mutual of Omaha*.

HUD further explained that a court may not be required to assess the actuarial soundness of a given insurance practice at the third step of the burden-shifting framework.  As the agency noted, "a plaintiff may not dispute that an insurer's practice complies with state law, but rather may show that there are alternative practices that also comply with state law that do not cause a discriminatory effect."  88 Fed. Reg. at 19,476, App.201.  A court thus would not need to determine whether the practice was actuarially sound, but rather would "focus[] on whether or not it produces a discriminatory effect and, if the insurer states a legitimate interest justifying the practice, the plaintiff may show that there is a less discriminatory alternative that would serve defendant's substantial, legitimate, nondiscriminatory interest."  *Id*.  Even if that alternative is risk-based, the court may not need to assess its actuarial soundness as the evidence might show that an insurer opted for one of two risk-based practices which were both equally actuarially sound and compliant with state law.  *Id*.

By providing these examples of potential applications of the burden-shifting framework that may not require actuarial determinations, HUD supported its position that *Mutual of Omaha* does not require a blanket exemption for risk-based pricing and underwriting practices. PCI's disagreement with one such example (Br.49 n.6) does not undermine HUD's reasonable conclusion that a case-by-case approach is warranted for McCarran-Ferguson preemption.

Contrary to PCI's suggestion, HUD thus did not purport to find disagreement with *Mutual of Omaha* a sufficient reason to deny an exemption. As an initial matter, HUD noted that it disagreed with *Mutual of Omaha* only "to the extent it implied that any claim requiring a court to assess the actuarial soundness of a policy and/or whether a policy or practice is consistent with state law necessarily interferes with a state administrative regime." 88 Fed. Reg. at 19,476, App.201. HUD agreed with the Fifth Circuit that the holding of *Mutual of Omaha* is consistent with the agency's case-by-case approach to McCarran-Ferguson, which also "appropriately accommodates any variations among the circuits that may exist, now or in the future, as to how McCarran-Ferguson should be applied[,] . . . include[ing] the Second Circuit's skepticism over whether

McCarran-Ferguson applies at all to 'subsequently enacted civil rights legislation.''' *Id.* at 19,474, App.199 n.208 (quoting *Viens,*113 F. Supp. 3d at 572 (quoting *Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1065 (2d Cir. 1982)).

**D.**  PCI also argues (Br.50-53) that HUD's reliance on variation in state insurance laws as an additional reason to deny an exemption was arbitrary and capricious.  But as discussed *supra* pp. 32-33, 42-43, because McCarran-Ferguson preemption depends on showing a conflict or impairment of a specific state law, it is highly relevant that insurance laws in the states vary greatly.  As HUD explained, "[t]he many ways in which one state's insurance laws can differ from another's, as well as the ways in which a single state's insurance laws can change over time, mean that even an exemption for specific insurance practices would be overbroad and quickly outdated."  88 Fed. Reg. at 19,475, App.200.

As the amici states in support of HUD argued, the agency's approach to McCarran-Ferguson "affords the highest level of respect to states' primacy in insurance regulation by accommodating policy and regulatory differences between the states."  Dkt.309 at 11.  Under the case-by-case approach, "variations in state insurance laws have resulted in

discriminatory effects challenges to similar insurance practices surviving a McCarran-Ferguson defense in some states but not in others," which reflects "the purpose of McCarran-Ferguson to support the autonomy and sovereignty of each individual state in the field of insurance." 88 Fed. Reg. at 19,475, App.200. As HUD recognized, insurers' requested exemption, in contrast, would "would deprive all states of [] federal support in addressing discriminatory insurance practices—even those states that welcome or depend on such support." *Id*.

**E.** Finally, PCI contends that "HUD arbitrarily dismissed the substantial costs the Rule will impose on insurers and the insurance market." PCI Br.53-55. This contention is equally meritless.

PCI's alleged costs are based on a misreading of the Rule. Contrary to PCI's suggestion, the Rule does not "pose a grave threat to the business of insurance" by prohibiting insurers from "set[ting] rates or mak[ing] underwriting decisions based on objective risk factors." Pl. Br.54.

First, the 2023 Rule imposed no new liability beyond what was already established under the FHA itself. In fact, prior to the 2013 Rule, homeowners insurers would have been subject to the same or a similar burden-shifting framework depending on the circuit in which they were

sued.  *See supra* pp. 7-8 & n.2.  The 2013 Rule as reaffirmed in the 2023 Rule

merely standardized the framework for evaluating discriminatory-effects

claims.[6]

Second, under the 2023 Rule, HUD emphasized that risk-based

decisions are not prohibited and specifically acknowledged the importance

of risk allocation in the insurance industry.  *See* 88 Fed. Reg. at 19,467-70,

App.192-95.  Moreover, other parties subject to discriminatory-effects

liability under the FHA and the 2023 Rule also regularly engage in risk-

based decision-making.  As HUD observed, "all businesses covered by the

Act make risk-based decisions," including mortgage lenders and landlords.

*Id*. at 19,467, App.192.[7]

That does not mean that risk-based practices of such businesses

should be exempt from discriminatory-effects claims under the FHA.  *Cf.*

_____

[6] As demonstrated above (*supra* p. 35), contrary to PCI's contention (Br.53), the Rule does not require insurers to collect demographic data.

[7] PCI's attempt to distinguish lenders and landlords because they are subject to "longstanding federal regulation" under the FHA (Br.54) is unavailing; as noted, prior to the 2013 Rule, most homeowners insurers would have been subject to the same or a similar burden-shifting framework depending on the circuit in which they were sued.  *See supra* pp. 7-8 & n.2.

PCI Br.54-55. Rather, as HUD recognized, "a discriminatory effects claim can challenge an insurer's underwriting policies as 'not purely risk-based' without infringing on the insurer's "'right to evaluate homeowners insurance risks fairly and objectively.'" 88 Fed. Reg. at 19,468, App.193 (quoting *National Fair Hous. All., Inc. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 60 (D.D.C. 2002)). And "[e]ven practices such as ratemaking that are largely actuarially based can incorporate an element of non-actuarially-based subjective judgment or discretion under state law." *Id.* Ratemaking processes that are primarily risk-based also may not be exclusively so, as exemplified by discounts for bundling homeowners and automobile insurance and price optimization practices that involve non-actuarial factors. *See id.*

Accordingly, the district court properly concluded that HUD's denial of an exemption for risk-based pricing and underwriting practices was not arbitrary and capricious.

## III. HUD's Burden-Shifting Framework Is Consistent With The FHA As Interpreted In *Inclusive Communities*.

PCI further contends (Br.55-62) that the 2023 Rule violates the FHA as interpreted in *Inclusive Communities* in several respects. The district court

properly rejected this argument (App.73-75, 122-24), and none of PCI's arguments on appeal is persuasive.

As HUD recognized, following *Inclusive Communities*, many courts, including three courts of appeals, have applied a burden-shifting approach consistent with the 2013 Rule or held that the Supreme Court implicitly adopted or endorsed the 2013 Rule. *See* 88 Fed. Reg. at 19,459-60, App.184-85; *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 618 (2d Cir. 2016) (holding that Supreme Court implicitly adopted HUD 2013 Rule); *Reyes*, 903 F.3d at 424, 428, 432 n.10; *Avenue 6E Invs. LLC v. City of Yuma*, 818 F.3d 493, 512-13 (9th Cir. 2016). The Fifth Circuit's contrary conclusion in *Inclusive Communities Project, Inc. v. Lincoln Property Company*, 920 F.3d 890, 902-04 (5th Cir. 2019), that the Supreme Court "announce[d] a more demanding test than that set forth in the HUD regulation," is not persuasive. *See* 88 Fed. Reg. at 19,460, App.185. As the court in *Lincoln Property* acknowledged, the Supreme Court in *Inclusive Communities* had affirmed the Fifth Circuit's judgment in that case applying the 2013 Rule's burden-shifting framework without questioning the validity of the 2013 Rule. 920 F.3d at 902. There was thus no basis for the Fifth Circuit to

impose more stringent requirements; nor do PCI's contentions provide any basis for doing so.[8]  *Cf* PCI Br.56-62; Br. of Am. Bankers Ass'n 19-22.

**A.**  First, PCI argues that HUD erroneously refused to incorporate a "'robust causality requirement" as contemplated by *Inclusive Communities*. PCI Br.56 (quoting *Inclusive Communities*, 576 U.S. at 542); *see also* Br. of Amicus Chamber of Commerce 8-9.  As both the district court below and the court in *NAMIC* properly concluded, this argument lacks merit.

HUD's 2023 Rule is fully consistent with the Supreme Court's discussion of causation in *Inclusive Communities*.  In the 2023 Rule, HUD acknowledged that *Inclusive Communities* requires "a court's examination of causality [to] be robust," and explained that both the 2013 and 2023 Rules contain that requirement by providing that the plaintiff must establish at the first step of the burden-shifting framework that the defendant's practice or policy caused the discriminatory effect.  88 Fed. Reg. at 19,460-61,

---

[8] PCI's reliance (Br. 59-60) on *Ellis v. City of Minneapolis*, 860 F.3d 1106 (8th Cir. 2017), and *Southwest Fair Housing Council*, 17 F.4th 950, is similarly misplaced.  For the reasons set forth in the text and as HUD explained in the 2023 Rule in discussing these cases (App.185 nn.92, 95, 96; App.213 n.311), *Inclusive Communities* does not require imposition of more stringent requirements on plaintiffs at steps two and three of the framework than those set forth in the 2013 Rule and readopted in the 2023 Rule.

App.185-86.  Insurers thus have the opportunity to show that state law "severs the causal connection between the insurer's practices and the disparate impact," and, "[i]f successful, the insurer should be able to get the case dismissed." *NAMIC*, 693 F. Supp. 3d at 38.  That state laws in some cases may sever the requisite causal connection does not make the 2023 Rule "unlawful or, somehow, categorically inapplicable to insurers," rather, the Rule may be applied on a case-by-case basis.[9]  *Id*.; *see* App.74

**B.**  Second, PCI contends that by failing to require plaintiffs to establish that the challenged practice is "artificial, arbitrary, and unnecessary," and that their proposed alternative to that practice is "equally effective," HUD's burden-shifting approach is inconsistent with *Inclusive Communities*.  PCI Br.58-60 (quotation marks omitted); *see also* Br. of Amicus Chamber of Commerce 10-14.  But as HUD emphasized in the rulemaking, the Supreme Court "*did not* require plaintiffs to show that a policy or practice is artificial, arbitrary, and unnecessary *in addition to*

---

[9] Nor does *Southwest Fair Housing*, 17 F.4th 950, support PCI's position.  *Cf.* Chamber of Commerce Br.9.  In that case, the Ninth Circuit acknowledged debate among courts about "the contours of the robust causality requirement" but found that it "need not enter that debate" because the causation requirement was so clearly met.  17 F.4th at 966.

proving an unjustified discriminatory effect." 88 Fed. Reg. at 19,471, App.196. To the contrary, HUD explained, "the Court, in quoting 'artificial, arbitrary, and unnecessary' from the decades-old case *Griggs* [*v. Duke Power Co.*, 401 U.S. 424, 431 (1971)] was describing the types of policies that will fail under the rule's traditional shifting burden framework, which is consistent with this final rule." *Id.* at 19,471-72, App.196-97.

Indeed, HUD's reliance on Title VII law and the FHA case law that has borrowed from it effectuates the safeguards the Supreme Court identified in *Inclusive Communities*. As the Supreme Court explained, "[a]n important and appropriate means of ensuring that disparate-impact liability is properly limited is to give housing authorities and private developers leeway to state and explain the valid interest served by their policies," and "[t]his step of the analysis is analogous to the business necessity standard under Title VII and provides a defense against disparate-impact liability." 576 U.S. at 541 (citing 2013 Rule). Step two of the burden-shifting framework in both the 2013 and 2023 Rules incorporates this safeguard. *See* 78 Fed. Reg. at 11,470, App.163; 88 Fed. Reg. at 19,471-72, App.196-97.

With respect to step three of the framework, HUD explained that "a requirement that alternative policies be 'equally effective' did not appear in *Inclusive Communities*, despite citation to the proposed source of the requirement, *Wards Cove* [*Packing Co. v. Atonio*, 490 U.S. 642 (1989)], and significant discussion of the checks on liability that have always been part of [FHA] jurisprudence."[10]  88 Fed. Reg. at 19,491, App.216.  HUD further made clear that under the 2023 Rule, "an unreasonable alternative practice that creates an undue burden on defendant would not satisfy plaintiff's three-step burden," and "nothing in the rule suggests that reasonable, valid policies and priorities of defendants will be second guessed or forced to be reordered."  *Id.*

Moreover, PCI mischaracterizes HUD's position by stating that "the Rule would impose liability whenever a risk-based practice approved or mandated by state regulators is *deemed* by a federal court to be 'replaceable

_____

[10] PCI does not argue that HUD's Rule was unlawful because the agency did not follow *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), and thus this Court need not address the question. *Cf.* Br. of Amicus Am. Bankers Ass'n 6-19.  In any event, as HUD explained, *Wards Cove* is not controlling because it involved Title VII, not the FHA, and it preceded *Inclusive Communities*. 88 Fed. Reg. at 19,470, App.195.

by a less discriminatory alternative.'" PCI Br.59 (quoting App.122). First, as the Rule reflects, an insurer would have the opportunity to assert McCarran-Ferguson preemption as a defense to any discriminatory-effects claims, and, depending on the claim and state law at issue, that defense could prevail. Second, PCI omits a critical part of step three; as HUD made clear, the plaintiff must establish "a less discriminatory alternative *that serves [the defendant's] substantial, legitimate, nondiscriminatory interest*." 88 Fed. Reg. at 19,470, App.195 (emphasis added). Thus, under the Rule, plaintiffs cannot prevail by simply proposing a less discriminatory alternative that does not adequately serve insurers' interest in assessing risk.

**C.** Finally, PCI asserts that "the Rule ignores the admonition of *Inclusive Communities* that courts must not allow disparate-impact liability 'to inject racial considerations into every housing decision,'" and alleges that the Rule requires insurers to collect, analyze, and use data on race. PCI Br. 60-61 (quoting *Inclusive Communities*, 576 U.S. at 543). In support of this assertion, PCI cites only its own comment letter to HUD and declarations from insurers that speculate about future data collection and use not required by the Rule. PCI Br.61.

Contrary to PCI's assertion, HUD expressly responded to insurers' concerns regarding the collection and use of data on race in the rulemaking. The agency noted that it "disagrees that this final rule will force insurers to consider protected traits of individuals in the rating and underwriting process." 88 Fed. Reg. at 19,469, App.194. And HUD unequivocally stated that it "is also not requiring data collection." *Id*. at 19,480, App.205. Moreover, HUD explained that to the extent that insurers voluntarily decide to examine the impact of their risk-based practices on protected classes, awareness of protected traits and the examination of the impact of race-neutral policies is distinguishable from making decisions based upon consideration of such traits, and is consistent with *Inclusive Communities*, the FHA, and the Equal Protection Clause. *Id*. at 19,469; *see Inclusive Communities*, 576 U.S. at 545.

In sum, the district court properly dismissed PCI's McCarran-Ferguson claim as unripe, and correctly held that HUD's refusal to exempt homeowners insurers from discriminatory-effects liability for their pricing and underwriting practices was not arbitrary and capricious and is consistent with *Inclusive Communities.*

# CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment.

Respectfully submitted,

MICHAEL D. GRANSTON
  *Deputy Assistant Attorney*
  *General\**

*Of counsel*:

MORRIS PASQUAL
  *Acting United States Attorney*

BEN KLUBES
  *Principal Deputy General Counsel*
JEANINE WORDEN
  *Associate General Counsel for*
  *Fair Housing*
AYELET WEISS
  *Assistant General Counsel for*
  *Fair Housing*
JULIA DYKSTRA
PAUL OSADEBE
  *Trial Attorneys*
  *U.S. Department of Housing*
  *and Urban Development*

MICHAEL S. RAAB
  *(202) 514-4053*
  s/ Stephanie R. Marcus
STEPHANIE R. MARCUS
  *(202) 514-1633*
  *Attorneys, Appellate Staff*
Civil Division, Room 7539
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C.  20530-0001
stephanie.marcus@usdoj.gov

\* The Principal Deputy Assistant Attorney General is recused in this matter.

OCTOBER 2024

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5), 32(a)(6), and Seventh Circuit Rule 32(c) because it has been prepared in 14-point Book Antiqua, a proportionally spaced typeface, and because it contains 13,764 words, according to the count of Word for Microsoft 365.

s/  Stephanie R. Marcus
Stephanie R. Marcus

☑

# CERTIFICATE OF SERVICE

### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on __October 10, 2024__, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ __Stephanie R. Marcus__

☐

# CERTIFICATE OF SERVICE

### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                    address:

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

s/_____