No. 24-1947

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA,

Plaintiff-Appellant,

v.

ADRIANNE TODMAN, Acting Secretary of the Department of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:13-cv-08564

## SUPPLEMENTAL BRIEF FOR APPELLEES

*Of Counsel:*

JEANINE WORDEN
  *Associate General Counsel for Fair Housing*

AYELET WEISS
  *Assistant General Counsel for Fair Housing*

JULIA DYKSTRA
PAUL OSADEBE
MAGGIE DONAHUE
  *Trial Attorneys*

U.S. Department of Housing and Urban Development

MICHAEL D. GRANSTON
  *Deputy Assistant Attorney General*

MORRIS PASQUAL
  *Acting United States Attorney*

MICHAEL S. RAAB
JEFFREY E. SANDBERG
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7214*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-4453*

## TABLE OF CONTENTS

Page

THIS SUIT DOES NOT PRESENT AN ARTICLE III CONTROVERSY ................................................................................................. 1

I. PCI HAS NOT ESTABLISHED AN ADEQUATE FACTUAL BASIS FOR STANDING. ........................................................................ 1

   A. PCI Has Not Shown Actual Or Imminent Injury. ................................. 1

   B. PCI's Claimed Harms Are Traceable To The Statute, Not The Rule, And Setting The Rule Aside Would Not Provide Redress ........... 4

   C. Being An "Object" Of Regulation Is Insufficient. ................................ 6

II. PCI'S CLAIMS ARE UNRIPE ................................................................... 6

CONCLUSION ...................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases:**

*American Chemistry Council v. DOT*,
    468 F.3d 810 (D.C. Cir. 2006) ............................................................... 4, 6

*Bonacci v. TSA*,
    909 F.3d 1155 (D.C. Cir. 2018) ................................................................. 6

*Bost v. Illinois State Bd. of Elections*,
    114 F.4th 634 (7th Cir. 2024) ..................................................................... 3

*California v. Texas*,
    593 U.S. 659 (2021) .................................................................................... 5

*Chagoya v. City of Chicago*,
    992 F.3d 607 (7th Cir. 2021) ..................................................................... 5

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................... 3

*Crete Carrier Corp. v. EPA*,
    363 F.3d 490 (D.C. Cir. 2004) ................................................................... 5

*Dinerstein v. Google, LLC*,
    73 F.4th 502 (7th Cir. 2023) ....................................................................... 3

*Do No Harm v. Pfizer, Inc.*,
    96 F.4th 106 (2d Cir. 2024) ........................................................................ 4

*Flynn v. FCA US LLC*,
    39 F.4th 946 (7th Cir. 2022) ....................................................................... 1

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024) ................................................................................ 5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................... 1

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ...................................................................................... 1

*National Ass'n of Home Builders v. EPA*,
    786 F.3d 34 (D.C. Cir. 2015) ..................................................................... 6

*National Park Hosp. Ass'n (NHPA) v. Dep't of Interior*,
  538 U.S. 803 (2003) ............................................................................ 6, 7

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
  656 F.3d 580 (7th Cir. 2011) .................................................................... 6

*Parents Protecting Our Children v. Eau Claire Area Sch. Dist.*,
  95 F.4th 501 (7th Cir. 2024) ............................................................ 3, 4, 7

*Perez v. Mortgage Bankers Ass'n*,
  575 U.S. 92 (2015) ...................................................................................... 5

*Prairie Rivers Network v. Dynergy Midwest Generation, LLC*,
  2 F.4th 1002 (7th Cir. 2021) .................................................................... 4

*Schirmer v. Nagode*,
  621 F.3d 581 (7th Cir. 2010) .................................................................... 5

*Sierra Club v. Marita*,
  46 F.3d 606 (7th Cir. 1995) ...................................................................... 1

*Sierra Club v. U.S. EPA*,
  774 F.3d 383 (7th Cir. 2014) .................................................................... 1

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .................................................................................... 4

*Sweeney v. Raoul*,
  990 F.3d 555 (7th Cir. 2021) ................................................................ 1, 6

*Texas v. EPA*,
  726 F.3d 180 (D.C. Cir. 2013) .................................................................. 5

*Texas v. United States*,
  523 U.S. 296 (1998) .................................................................................... 7

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) .................................................................................... 2

**Statutes:**

42 U.S.C. § 3612(a), (o) .................................................................................. 5

42 U.S.C. § 3613 .............................................................................................. 5

**Regulations:**

88 Fed. Reg. 19,450 (Mar. 31, 2023) ...................................................... 1, 3, 4

24 C.F.R. § 100.500 ................................................................................ 1

At the Court's request, the government addresses whether plaintiff-appellant Property Casualty Insurers Association of America (PCI) has Article III standing to challenge HUD's 2023 discriminatory effects regulation. *Cf.* 88 Fed. Reg. 19,450 (Mar. 31, 2023) (promulgating 24 C.F.R. § 100.500) (2023 Rule). This Court has an "ongoing obligation to assure itself of" jurisdiction, *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022), and reviews "*de novo*" both "standing and ripeness," *Sierra Club v. Marita*, 46 F.3d 606, 611 (7th Cir. 1995). PCI has not met its burden on summary judgment of showing injury-in-fact, causation, or redressability, or that its claims are ripe for review.

**THIS SUIT DOES NOT PRESENT AN ARTICLE III CONTROVERSY**

**I.   PCI Has Not Established An Adequate Factual Basis For Standing**

At the summary-judgment stage, a plaintiff "can no longer rest on … 'mere allegations'" of standing, "but must 'set forth' by affidavit or other evidence 'specific facts.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). PCI thus must offer evidence that it or its members "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024); *cf. Sierra Club v. U.S. EPA*, 774 F.3d 383, 388-89 (7th Cir. 2014) (test for associational standing). PCI has not done so.

**A.   PCI Has Not Shown Actual Or Imminent Injury.**

"Concreteness requires [an] injury to exist and be 'real,' not 'abstract.'" *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). But PCI has not tendered evidence of any actual harm. *See* App. 91 (observing that "PCI has not collected updated declarations or advanced other evidence of what real-world

impacts (if any) the Rule has had on the insurance industry"). Neither theory of injury offered in district court—"future compliance costs" and "increased exposure to disparate-impact liability" (App. 90)—is sufficient.

**1.** PCI cannot premise standing on a bare assumption that the 2023 Rule will force it to incur compliance costs, such as collecting demographic data. PCI has not submitted any evidence to support that assumption. Instead, it merely points to declarations of insurance executives prepared in May 2014— more than ten years ago—predicting that a prior, virtually identical rule promulgated in 2013 would, at some undefined time, require them to collect and analyze data to determine whether their ratemaking and underwriting practices are impermissibly discriminatory. *See* Dkt. 283-5 to 283-8. As the district court emphasized, *see* App. 90-91, PCI has offered nothing to show that these predictions ever came true. PCI cannot rely on outdated predictions as a substitute for evidence.[1]

Moreover, even if PCI had updated its declarations, they would not suffice to show imminent injury. The Rule does not "requir[e] data collection."

---

[1] Those declarations also addressed a different legal landscape. In 2014, the Supreme Court had not decided whether the FHA prohibits discriminatory effects, and the district court had understood the 2013 Rule to go "beyond established law" by contemplating "disparate impact liability in jurisdictions that had not" yet recognized it. App. 35-36. But it is now clear the statute itself imposes discriminatory effects liability. *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015). It thus cannot be assumed that any feared compliance costs flow from HUD's Rule rather than the statute itself. If anything, the Rule may actually *decrease* compliance costs; by making clear the approach that HUD will take to evaluating potential claims, and by reaffirming an interpretive framework that many courts have adopted or may adopt, the Rule provides useful guidance and may reduce legal uncertainty.

88 Fed. Reg. at 19,480. On the contrary, it *disclaims* any need to collect racial data, whether as a legal or practical matter. *See id.* at 19,469-70; App. 124 (agreeing that Rule "does not 'require those engaging in housing practices to collect or use data on individuals' protected characteristics'"). Any costs associated with voluntary data-collection efforts would thus be "self-inflicted." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see, e.g.*, *Bost v. Illinois State Bd. of Elections*, 114 F.4th 634, 642 (7th Cir. 2024) (no injury where "it was Plaintiffs' choice to expend resources to avoid a hypothetical future harm" that was "'not certainly impending'").

**2.** PCI also cannot premise standing on "increased exposure to disparate impact liability," App. 90. Any such liability would flow from the statute itself—not the 2023 Rule, which imposes no substantive obligations and cannot be violated. The Rule simply reaffirms one well-established interpretive framework for determining liability, without offering any opinion about what, if any, specific real-world insurance practices would ever be found unlawful.

In any event, PCI has not shown any imminent threat of enforcement against its members' risk-based pricing and underwriting practices, even though potential discriminatory-effects liability has existed for decades. *See* 88 Fed. Reg. at 19,469-70, 19,476, 19,478. "'Allegations of *possible* future injury' are not sufficient"; "'threatened injury must be *certainly impending* to constitute injury in fact.'" *Clapper*, 568 U.S. at 409. Hypothetical future liability is not "sufficiently imminent to establish standing." *Parents Protecting Our Children v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 505 (7th Cir. 2024); *see Bost*, 114 F.4th at 642; *Dinerstein v. Google, LLC*, 73 F.4th 502, 511-15 (7th Cir. 2023).

**3.** In all events, PCI cannot rely on generalized predictions, but must show specific injury as to "'at least one identified member.'" *Prairie Rivers Network v. Dynergy Midwest Generation, LLC*, 2 F.4th 1002, 1009 (7th Cir. 2021) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)). There is no "statistical probability theory of associational standing" under which a court "presum[es]" at least one group member will be affected by a challenged action. *Id.* at 1009-10. Here, PCI's "expressions of worry and concern do not suffice to show that any [particular member] has experienced actual injury or faces any imminent harm" caused by the Rule. *Parents Protecting*, 95 F.4th at 506; *accord Do No Harm v. Pfizer, Inc.*, 96 F.4th 106, 115-19 (2d Cir. 2024); *American Chemistry Council v. DOT*, 468 F.3d 810, 819-20 (D.C. Cir. 2006).

**B. PCI's Claimed Harms Are Traceable To The Statute, Not The Rule, And Setting The Rule Aside Would Not Provide Redress.**

PCI also has not established that any injury is traceable to the Rule. The 2023 Rule "makes no change to the status quo," 88 Fed. Reg. at 19,472; "does not impose any new liability," *id.* at 19,454; and does not purport to require action by insurers. The Rule merely reaffirms HUD's longstanding view that discriminatory-effect claims are best adjudicated through a three-step burden-shifting framework, which "takes into account any ... legitimate interest[s]" in defendants' business practices. *Id.* at 19,465. "Any [discriminatory-effects] liability originates from the Act itself, not HUD or the rule." *Id.* at 19,466. In fact, to the extent the Rule addresses the risk-based practices of concern to PCI, it *disclaims* that its framework would "prohibit[] insurers from making decisions that are in fact risk-based." *Id.* at 19,467.

The traceability problem is underscored by the fact that the Rule, "[a]s an interpretive regulation," "does not have the force of binding law." *Chagoya v. City of Chicago*, 992 F.3d 607, 617 n.22 (7th Cir. 2021) (quotation marks omitted); *see Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96-97 (2015). Though HUD of course believes the Rule is persuasive, to the extent courts disagree, they are free to adopt another interpretive framework; they are not bound to defer to the Rule. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024).

Redressability is also lacking. PCI seeks to "vacate[]" the Rule "as applied to risk-based pricing and underwriting of homeowners insurance." Reply Br. 3. But doing so would not prevent its feared liability. The FHA itself prohibits housing practices with unjustified discriminatory effects, *see Inclusive Cmtys.*, 576 U.S. at 530-40,[2] and private plaintiffs can enforce that prohibition without HUD's involvement, 42 U.S.C. § 3613.[3] Courts adjudicating FHA suits would remain free to apply the statute. PCI's requested relief thus will not "actually prevent [the] injury" its members "fear they will suffer." *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010); *accord, e.g.*, *California v. Texas*, 593 U.S. 659, 678-80 (2021) (no causation or redressability where other legal provisions would still cause same injuries); *Texas v. EPA*, 726 F.3d 180, 197-99 (D.C. Cir. 2013); *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 493 (D.C. Cir. 2004).

---

[2] As discussed in our brief (at pp. 5, 18, 51-52), nothing in the FHA provides any exemption for homeowners' insurers generally or for their ratemaking and underwriting practices specifically, despite providing other express exemptions.

[3] Even those FHA complaints initially investigated by HUD that result in charges of discrimination may, upon election of any party (including the respondent), proceed in a *de novo* civil action in court rather than through a hearing before an administrative law judge. 42 U.S.C. § 3612(a), (o).

5

### C. Being An "Object" Of Regulation Is Insufficient.

The district court acknowledged these deficiencies, but nonetheless stated it was "comfortable reaching the merits" because PCI's members are regulated parties, and "standing ... is usually 'self-evident' where [plaintiffs] are an 'object of the action (or forgone action) at issue.'" App. 91-92 (quoting *Bonacci v. TSA*, 909 F.3d 1155, 1160 (D.C. Cir. 2018)). But Article III does not afford any party—regulated or not—a presumption that their policy concerns are justiciable. "In regulated-party cases," as in others, "'standing is always a case- and context-specific inquiry'" and "depends on plaintiffs showing that they satisfy the doctrinal requirements of Article III." *National Ass'n of Home Builders v. EPA*, 786 F.3d 34, 43 (D.C. Cir. 2015); *see also American Chemistry Council*, 468 F.3d at 821 (even when plaintiff is object of regulation, standing requires factual showing of actual or imminent harm); *cf. Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 585-86 (7th Cir. 2011) (finding "object" standing because the challenged rule itself imposed substantive obligations, which plaintiffs could be punished for violating).

## II. PCI's Claims Are Unripe

These problems can also be understood in terms of ripeness, which has both Article III and prudential dimensions. *See National Park Hosp. Ass'n (NHPA) v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). The district court correctly concluded that PCI's McCarran-Ferguson Act claim "is not yet fit for judicial review." App. 25. But PCI's other attacks upon the 2023 Rule are also "best left for a concrete dispute challenging a particular insurance practice." App. 32; *see Sweeney*, 990 F.3d at 560-61 (ripeness lacking in analogous case).

All of PCI's claims are founded on the fear that HUD or other plaintiffs might challenge certain risk-based insurance practices that PCI believes to be lawful. But "the Court can only speculate about what types of disparate impact claims HUD or private plaintiffs may assert against insurers," particularly given "[v]ariations among state regulatory regimes." App. 28. The feared challenges to "risk-based pricing and underwriting" (Reply Br. 1) have not yet materialized and indeed may never arise. Federal courts do not provide preemptive advice to address "contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998); *cf. Parents Protecting*, 95 F.4th at 505-06 ("All we have before us is a policy on paper without concrete facts about its implementation").

The district court agreed that "further information on the Rule's ultimate consequences could certainly shed light on" the reasonableness of HUD's explanations in the 2023 Rule. App. 95. It deemed PCI's claims ripe based on a misimpression that the Rule is "'substantive'" and "'requires PCI's members to adjust their conduct immediately.'" *Id.* (brackets omitted). But as discussed, the Rule does not purport to regulate primary conduct, and instead reaffirms one non-binding framework through which substantive questions of liability might later be decided. Such a regulation "'is not ordinarily considered the type of agency action 'ripe' for judicial review.'" *NHPA*, 538 U.S. at 808.

## CONCLUSION

For the foregoing reasons, the judgment should be vacated in part and remanded with instructions to dismiss for lack of jurisdiction.

7

<div style="display: flex;">

<div>
*Of Counsel:*

JEANINE WORDEN
   *Associate General Counsel for Fair Housing*

AYELET WEISS
   *Assistant General Counsel for Fair Housing*

JULIA DYKSTRA
PAUL OSADEBE
MAGGIE DONAHUE
   *Trial Attorneys*

*U.S. Department of Housing and Urban Development*
</div>

<div>
Respectfully submitted,

MICHAEL D. GRANSTON
   *Deputy Assistant Attorney General**

MORRIS PASQUAL
   *Acting United States Attorney*

MICHAEL S. RAAB
*/s/ Jeffrey E. Sandberg*
JEFFREY E. SANDBERG
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7214*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 532-4453*
   *jeffrey.e.sandberg@usdoj.gov*
</div>

</div>

\* The Principal Deputy Assistant Attorney General is recused in this matter.

*Counsel for Defendants-Appellees*

JANUARY 2025

# CERTIFICATE OF COMPLIANCE

This supplemental brief complies with the page limit of this Court's December 13, 2024 order because it contains seven pages. This supplemental brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Calisto MT 14-point font, a proportionally spaced typeface.

<div style="text-align: right;">

/s/ *Jeffrey E. Sandberg*
Jeffrey E. Sandberg

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, I electronically filed the foregoing supplemental brief with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the CM/ECF system.

/s/ *Jeffrey E. Sandberg*
Jeffrey E. Sandberg